# LOUIS CARETTI *v.* BRORING BUILDING CO.

*Pollution of Stream—Suburban Sewerage System—City as Party—Reversal and Remand—Injunction in Certain Contingency.*

Where the evidence showed that defendant, engaged in a suburban real estate development, placed sewers in the streets and alleys, to which it retained the title, and that sewage from such sewerage system was discharged into a stream which flowed through plaintiff's land, and that such discharge increased the pollution of the water of the stream and prevented plaintiff's use of the stream for bathing and the watering of geese and cattle, *held* that plaintiff was entitled to an injunction against defendant to prevent such discharge, although the houses in which the sewage originated no longer belonged to defendant.      pp. 204-206

The cutting away of the banks of the stream on defendant's property *held* on the evidence not to be the result of the discharge of sewage from defendant's sewerage system.      p. 207

A city, which did not build or own a suburban sewerage system, nor own the ground in which the pipes, and on which the septic tank, constituting part of the system, were placed, was not a necessary party to a proceeding to prevent the pollution of a stream by a discharge of sewage from the system, although it approved the system, paid part of the cost of the tank, occasionally inspected it in the interest of the public health, and had by contract the privilege of taking over the system free of cost.      pp. 207-209

On reversing a decree refusing to enjoin the pollution of a stream by discharge from a suburban sewerage system, *held* that, since the sudden closing of the system might create a serious situation, the Court of Appeals would remand the case with instructions to issue an injunction unless, within a reasonable time, the appellee changed the system in such a way as to avoid injuring the appellant.      p. 210

*Decided March 10th, 1926.*

Appeal from the Circuit Court No. 2 of Baltimore City (STANTON, J.).

Bill by Louis Caretti against the Broring Building Company. From a decree dismissing the bill, plaintiff appeals. Reversed.

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and WALSH, JJ.

*Lewis W. Lake* and *W. Calvin Chesnut,* for the appellant.

*George Arnold Frick,* with whom were *J. Chas. Linthicum & Bro.,* on the brief, for the appellee.

WALSH, J., delivered the opinion of the Court.

This suit was brought by the appellant, the plaintiff below, to enjoin the appellee from emptying sewage in a stream of water which flows through the appellant's land at a point below where the sewage enters the stream.

In 1915 the appellant purchased a tract of ground containing about seven acres through which a stream of water known as Herring Run flows. This land at the time of its purchase was located in Baltimore County, but is now within the limits of Baltimore City by virtue of the Annexation Act of 1918. After purchasing it the appellant moved on it with his family, and they have since all resided there. In 1919 the appellee bought a tract of land of about thirty acres situated at the southeasterly intersection of Herring Run and the Belair Road, which property is about three-quarters of a mile above the appellant's property, and at the time this suit was brought about seventy houses had been built on this land by the appellee, and sold by it to various private individuals, who were occupying them with their families, twelve other houses were practically completed, and all of the completed houses were connected, and the others were to be connected, with a sewerage system constructed by the appellee. It also appears that the appellee intended to

continue building additional houses, that these houses when built would likewise be connected with the existing sewers or extensions of them, and the sewage from all the toilets in these houses, as well as the waste water from bathtubs, kitchen sinks and other sources would apparently be carried away by the sewerage system above mentioned. The sewer pipes were laid in the beds of certain streets and alleys on the land of the appellee, and the title to the beds of these streets and alleys was in the appellee. It further appears that the contents of this sewerage system flowed into a septic tank, and that the discharge from this tank emptied into Herring Run at a point about three-quarters of a mile above the land of the appellant. After setting out the foregoing facts, none of which are successfully disputed, the bill of complaint alleges that the water being discharged from the septic tank is polluted and discolored with vegetable and animal matter, and with the refuse of kitchens, the waste water from bathrooms and sinks, and the overflow from cesspools and the exhaust of toilets, and that as a result of this the banks of Herring Run, both at the point where the sewer empties into it and also where the run flows through the appellant's property, are covered with green scum and are marked with other deposits of obnoxious nature, and that this pollution gives off a foul and disagreeable odor at all times, and especially during hot and dry weather. It is further alleged that all the water used in the houses built by the appellee is obtained from the Baltimore City water supply, that hence the drainage from the sewer constitutes an unnatural addition to the volume of water flowing in Herring Run, that this increased volume has already changed the course of Herring Run and has caused it to flow in a newly created bed over the property of the appellant, that it is cutting away the banks of the stream on this property and thus destroying the property, and that this destruction will increase as new houses are built and sold by the appellee and the volume of drainage from the sewer is thus enlarged.

The bill finally alleged that prior to 1921 the appellant

used his property as a pleasure resort, that people who visited him bathed in the water of Herring Run, that the water was clear, wholesome and unpolluted, was inhabited with fish and used by cattle and geese for watering purposes, and was of great value to the appellant in the use and enjoyment of his property, but that since 1921 it has been polluted and unfit for any use, and that because of this pollution large swarms of flies and gnats had appeared and infested the entire property of the appellant, that these conditions were steadily growing worse, and that they constituted a taking of the appellant's property, solely for the financial benefit of the appellee, and so entitled the appellant to an injunction restraining the appellee from committing the wrongs complained of. The appellee, the Broring Building Company, demurred to the bill on the ground that it did not show any cause for equitable relief, and also on the ground that the bill showed on its face that there were additional parties interested in the subject-matter of the suit who should have been made parties to it, and on the demurrer being overruled it answered, admitting the ownership and development of the land mentioned in the bill, but disclaimed any responsibility for the sewerage system, and alleged lack of knowledge of the condition of Herring Run complained of in the bill. The appellee's contention that it is not responsible for the sewerage system is based on the fact that the system was constructed in accordance with plans and specifications prescribed by the Mayor and City Council of Baltimore, and the further fact that it has contracted to convey this sewerage system to the Mayor and City Council of Baltimore, free of cost, whenever that municipality desires it to do so, and the further fact that it does not own any of the houses from which the sewage comes, it having sold all the houses which are now occupied.

It appears from the record that the City of Baltimore in 1901 began the construction and development of a comprehensive sewerage system for the entire city, and that the system is being extended to new developments within the

city limits as rapidly as the funds available for that pur-
pose will, from time to time, permit. The acquisition of
that part of Baltimore County which was added to the city
by the Annexation Act of 1918, together with the rapid
expansion and development of the city in other directions,
has rendered it impossible, with the funds available, to ex-
tend and expand the city sewerage system with sufficient
rapidity to at once take care of the Annex and the newer
developments, and to cope with this situation the city devised
the plan of refusing to grant building permits for the erec-
tion of houses in localities which were without city sewer-
age facilities, unless a private sewerage system, approved
by the city, was provided for the houses to be built. The
idea underlying this plan was, first, that the health of the
community would be preserved by requiring the installation
of approved sewerage systems, and, secondly, that these
private sewerage systems, having been built in accordance
with plans approved by the city and being in keeping with
the city's own sewerage system, could be added to that sys-
tem as its trunk lines and other facilities were gradually
extended throughout the more recently developed sections of
the city.

Mr. Milton J. Ruark, division engineer of sewers for
the City of Baltimore, testified that it was the established
policy and practice of the city to require persons desiring
to develop land in the Annex to secure plans for the sewerage
system from the city, or to have the city approve the plans
of the developers, that the sewers were then built in accord-
ance with such plans, and eventually, as the sewerage system
of Baltimore City was extended into the new territory, these
private systems would be connected up and taken over by
the city. He further testified with specific reference to
Herring Run that it was the intention of the city to extend
one of its trunk sewers along Herring Run, build additional
sewers in that territory, and eventually take care of all the
houses which would be built in that district, but he did not
give the time when this would be done.

It also appears from the record that the plans for the sewer involved in this case were approved by the city and the sewer was then built by the appellee in accordance with those plans, that the septic tank into which the sewer drained was built by the appellee, on land owned by it, and one-half the expense of constructing it was borne by the City of Baltimore, that the appellee had made a contract with the city to convey to the latter free of cost the entire sewerage system, including the land on which the septic tank was located, whenever the city desired it to do so, but that this conveyance had not yet been made, and finally it appeared that the City of Baltimore exercised some supervision over the septic tank and has made several inspections of it since it was built.

The appellee offered some evidence tending to show that the condition of Herring Run is not nearly as bad as the appellant alleges, and it produced further testimony showing that the pollution in the run comes from many additional sources other than the sewage complained of in this case, but it is conceded that about twenty thousand gallons of sewage empty daily into Herring Run from the septic tank above mentioned, that, although this is a little less than one *per centum* of the total volume of water flowing by a given point in the run every twenty-four hours, it is nevertheless sufficient to cause some pollution of the stream, and at least some of the appellee's own witnesses stated that they would not want to drink the water in the run, where it flows over the appellant's land, even if this sewage was the only pollution entering the stream. It is also established by a preponderance of the evidence that the present conditions in Herring Run are worse than they were before the sewage complained of was turned into it, that there is more pollution in the water flowing through the appellant's land than there formerly was, and that this pollution has resulted in the deposit of obnoxious substances on the land of the appellant, the clouding of the water, the covering of the stones and pebbles in the stream with some slimy matter,

the creation of foul smells, and the breeding of large numbers of mosquitoes, flies and other objectionable insects. There is also testimony by the appellant's family physician that residence on or near the run in its present condition is apt to cause injury to health, evidence by the appellant and his wife that they have been unable since 1921, because of the condition of the run, to rent a house erected on their land, and evidence by many people that the water in the run is now totally unfit for human consumption or use, though it was, up to 1921, used as part of the water supply of Highlandtown. The appellee on its part, as we said above, introduced evidence tending to minimize the conditions complained of, asserting that whatever pollution did exist was largely due to causes other than the sewage mentioned, and stating that the condition of the run above the septic tank was the same as it was below. And the appellee also contended that the increased volume of water, which the appellant alleged cut away the banks of the stream on his property and changed its bed, was due to the increase in natural drainage, which did not flow through the sewer, and was not caused by the one *per centum* addition to the volume of the stream which came from the sewer. It would serve no useful purpose to further detail the evidence contained in the rather voluminous record before us. It is sufficient to say that, in our opinion, this evidence establishes that there is more pollution in Herring Run now than there was before the sewage complained of in this case was emptied into it, that part at least of this additional pollution comes from this sewage, and that this increased pollution is causing damage to the appellant's property, and preventing his use of the stream for bathing purposes, the watering of geese and cattle, etc.

The law applicable to such a state of facts has been definitely settled in Maryland by the recent case of *Neubauer v. Overlea Realty Co.*, 142 Md. 87, and, unless the appellee's contention that the City of Baltimore should be a party to this suit is sound, we think the principles laid down in the

Neubaner case are decisive of the present controversy. In that case, which involved an application for an injunction to restrain the pollution of a stream carried on in a manner very similar to that complained of in the present case, the Court said: "The evidence shows that by reason of the pollution of the stream by the appellee the water can no longer be used for the domestic and other purposes for which it was used by the appellants and others for more than twenty years prior to such pollution. The fact that the stream is to some extent polluted by others before it enters Belmar and receives the sewage from Kolb and Belmar Avenues, and the further fact that by reason thereof the water is not fit, and was never used, for human consumption, affords no justification for the acts of the appellee, and the case comes within the principle clearly stated in *Woodyear v. Schaefer,* 57 Md. 1, and followed in all the later decisions of this Court."

The Court then quoted as follows from *Woodyear v. Schaefer,* 57 Md. 1: " 'The right of a riparian owner to have the water of a stream come to him in its natural purity, or in the condition in which he has been in the habit of using it for the purposes of his domestic use or of his business, is as well recognized as the right to have it flow to his land in its usual quantity. *Wood on Nuis.,* sec. 677; *Gladfelter v. Walker,* 40 Md. 1, 13; *Wood v. Sutcliffe,* 2 Sim. N. S. 163; *Stockfort Waterworks Co. v. Potter,* 7 H. & N. 159. * * * It is no answer to a complaint of nuisance that a great many others are committing similar acts of nuisance upon the stream. Each and every one is liable to a separate action, and to be restrained. *Wood on Nuis.,* sec. 689; *Crosley v. Lightowler,* L. R. 3 Eq. 279; *Chipman v. Palmer,* 16 N. Y. 517.' See also *Baltimore v. Warren Manfg. Co.,* 59 Md. 96, and *West Arlington Co. v. Mount Hope,* 97 Md. 191."

And it also approved the following quotation from the case last cited: "This improvement company has expended large sums of money for the development and drainage of its property, and it is to be regretted if the location be such

that no method of drainage can be reasonably adopted which will not affect the rights of others, but if we are to be governed by legal principles that are thoroughly and clearly established, in this State as well as elsewhere, there can be no doubt that the facts proven admit of but one conclusion to be reached. * * * The fact that other parties have been contributing to the nuisance complained of is no excuse."

And finally the Court said: "In answer to the contention of the appellee that it no longer owns the houses and septic tanks on Kolb and Belmar Avenues, and does not own the bed of those streets, and is not therefore in a position to remedy the condition complained of, it would seem only necessary to say that, while the deed to the appellee is not in the record, it is conceded that it purchased the tract of land called Belmar from Mr. Kolb, the president of the company, that it constructed and is maintaining the drainage and sewerage system in question, that in selling the houses and lots on Kolb and Belmar Avenues it did not sell or convey to the purchasers the bed of said streets, or the terra cotta pipes laid in the bed thereof, through which the drainage and sewage complained of flows directly or indirectly into the larger stream, and that in the further development of its said property it proposes to construct the same system of drainage and sewerage for the other streets, which will, as we have pointed out, result in further injury to the appellants' farm."

These quotations certainly answer in the negative all the contentions of the appellee, save its argument that Baltimore City should be made a party to the suit. Indeed, the facts in the two cases, as well as the defenses, are almost identical. In each case the appellee was engaged in a real estate development, and the sewers were placed in streets and alleys, the title to which was retained by the appellee, neither appellee owned the houses in which the sewage originated, and in neither case was the pollution due entirely to the sewage complained of. Yet this Court held that the appellee in the *Neubauer* case was sufficiently responsible for the damage

occasioned the appellant to justify and require the issuance of an injunction, and in our opinion, the same conclusion must be reached in the present case.

We do not think, however, that the appellant has shown that the sewage complained of is responsible for the cutting away of the banks of the run where it goes through the appellant's property. The increase caused by the sewage is less than one *per centum* of the total volume, and there is no evidence in the record that such an increase would materially affect the banks of the stream. Nor is there any definite evidence in the record showing that the additional increase of almost one hundred *per centum* in the volume of the stream, testified to by some of the appellant's witnesses, comes from sources, other than the sewer, of which the appellant can properly complain; so it cannot be said that the sewage forms part of a wholly improper increase. In other words, the appellant has not shown that the increase complained of, other than the sewage, is caused by anything unlawful. For this reason we do not think he is entitled to an injunction on this ground. It is true that if the appellee's plans are carried out, some four or five hundred houses will eventually be erected on its property, and it seems a fair inference from the record that the sewage from all these houses would eventually reach Herring Run and thus increase the volume five or six *per centum,* but even such an increase has not been shown by itself to be sufficient to wash away the banks, and we accordingly hold that the appellant has not sustained this part of his case.

This brings us to a consideration of the appellee's contention that the City of Baltimore has sufficient interest in this sewer to render it a necessary party to this suit, and the further argument that, if it were a party, the fact that it is a municipal corporation, acting under legislative authority in the interests of the health and well being of the community as a whole, would render it less subject to the remedy of an injunction than is the appellee, a private corporation acting solely for the financial gain of its stockholders. We

cannot agree that the City of Baltimore is a necessary party. The city does not own the ground in which the sewer pipes are placed nor the ground on which the septic tank is located, it does not own the sewer pipes or septic tank, nor did it construct the sewerage system, and, according to the testimony, it cannot, in any proper sense, be said to operate the system. It approved the sewer plans, paid one-half the cost of constructing the septic tank, and, in accordance with its authority to inspect both public and private sewers and its general plan of looking after the health of the city, it has made occasional inspections of the operation of the septic tank and the character of effluent which came from it. It also has a contract with the appellee whereby the latter has agreed to convey the sewer system to the city whenever the city requests it to do so, but there is no provision in this contract requiring the city ever to take over the sewer.

It is difficult to understand on what legal principle the city, under the foregoing state of facts, could be held to have enough interest in this sewer to require its being made a party to this suit. The city did not build the sewer, it did not own it, and, conceding for the sake of the argument, but not deciding, that the character of supervision exercised by the city could eventually give it certain prescriptive rights in the sewer, it cannot be held in this case that any such rights were acquired, because this supervision has existed for only four or five years at most. For this, as well as other reasons, the present case is clearly distinguishable from the case of *Kranz v. Baltimore,* 64 Md. 491, in which our predecessors held that the City of Baltimore had acquired by more than twenty years user and supervision the right to use a run as a sewer, and was responsible for failing to keep it in repair. In the case now before us, it would seem that whatever rights the city has in the sewer complained of are both prospective and uncertain. It may never exercise its right under the contract to acquire the sewer, and it clearly might not exercise, for the required twenty years, that supervision and user which would be

needed to give it a right by prescription. At the present
time, it exercises only a limited supervision over the sewer,
and as we know of no authorities holding that such a super-
vision, carried on for only a few years, gives any proprietary
interest to a municipality, we are compelled to hold that the
city has no proprietary interest in the sewer. Nor do we
think that the general duty of the city to supervise and
inspect sewers in the interest of the health of the community,
and its manner of exercising that duty in the instant case,
are sufficient to make it a necessary party to this suit. See
*Block v. Baltimore,* 149 Md. 39. It follows from what we
have said that the city was not a necessary party.

The division engineer of sewers for the city testified that
the granting of an injunction in this case would "slow up"
sewer work throughout the city, but this statement alone
is certainly not sufficient to establish that the city has any
interest in this sewer of which the courts can take cogniz-
ance. If the city knows of facts and reasons not shown by
this record, which would add force to the argument that it
should be made a party, it should have intervened in the case
below and thus secured an opportunity to show those facts
and reasons. The officer in charge of its sewerage system
and three or four other city officials testified in the case,
and appear to have assisted the appellee in preparing its
case, so that it cannot now be successfully maintained that
the city had no knowledge of the suit, and as it failed to inter-
vene we are forced to the conclusion that it did not wish to
do so, or that it had no additional evidence to offer on the
point under discussion.

Our views on this branch of the case render it unneces-
sary to consider the appellee's further contention that, if
the city were made a party, no injunction should issue be-
cause the sewer complained of would then fall within that
class of cases in which the courts have held that municipali-
ties, when acting under legislative authority, may, for the

benefit of the public, do certain things which might otherwise be considered nuisances. This doctrine, within certain limits, has received the apparent sanction of this Court in *Baltimore v. Fairfield Improvement Co.*, 87 Md. 360; *Taylor v. Baltimore*, 130 Md. 139, and *Block v. Baltimore*, *supra*, but there is no occasion to determine whether it applies in the present case, because, as we have seen, the City of Baltimore has not been shown to have sufficient interest in the sewer to require its being made a party to this suit, and hence there is no municipality involved in the case. As what we have already said shows clearly that no error was committed by the learned court below in overruling the demurrer to the bill of complaint, we will not further discuss that question.

It was strongly urged by the learned counsel for the appellee, both in the oral argument and in his brief, that the granting of an injunction in this case will work a very great hardship on the appellee and the owners of the houses now connected with the sewer, and that the resulting conditions will seriously menace the health of the occupants and those living in the vicinity of the houses. Both of these contentions may be true, though there is testimony in the record from which it would be reasonable to conclude that most if not all the damage caused the appellant by this sewer could be remedied by providing, at some expense of course, additional means of treating the sewage before it is allowed to enter the run. But even though there was no remedy, these contentions, in the present case, would not prevent the issuing of an injunction if the conditions complained of are not changed. However, as the sudden closing of this sewer system would create a very serious situation, and as there may be some way in which the damage to the appellant can be avoided without closing the sewer, we will remand the case with instructions to issue an injunction in accordance with this opinion, unless, within such reasonable time as the lower court may deem proper,

the appellee changes its sewerage system in such a way as to avoid its injuring the appellant.

> *Decree reversed, with costs, and cause remanded, to the end that an injunction may be issued in accordance with this opinion.*

Bond, C. J., and Parke, J., dissent.