## J. T. DONOHUE REALTY COMPANY *v.* HENRY W. WAGNER ET AL.

[No. 21, January Term, 1928.]

*Decided April 3rd, 1928.*

The cause was argued before BOND, C. J., PATTISON, AD-KINS, URNER, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*C. Morris Harrison,* with whom was *William F. Broening* on the brief, for the appellant.

*William H. Surratt,* with whom was *Paul R. Hassencamp* on the brief, for the appellees.

OFFUTT, J., delivered the opinion of the Court.

The J. T. Donohue Realty Company, a Maryland corporation, is engaged in the business of buying, selling, improving, and developing real estate. Henry W. Wagner owns a tract of thirty-nine acres of land on the Eastern Avenue road near Mace Avenue in Baltimore County.

On October 19th, 1926, Henry W. Wagner and Frances H. Elizabeth Wagner, and the J. T. Donohue Realty Company, executed a formal written contract signed and sealed by the parties and by Thomas J. Donohue, president of the corporation, under which the Wagners sold the property to the corporation for $77,500, of which $1,000 in cash was paid and the balance was to be paid in the following manner: "Fourteen thousand ($14,000.00) dollars in cash within sixty (60) days from the above date, and the balance of the purchase money sixty-two thousand five hundred ($62,500.00) to be carried on a five year mortgage at six per centum per annum, with a release clause in lots of not less than one acre at a time upon payment of the sum of twenty-five hundred ($2,500.00) dollars, with interest, copy of said mortgage is attached hereto." The vendors further agreed that upon the payment of the whole purchase price they would convey the property to the corporation by a "good and merchantable title."

After making the initial payment of $1,000, the appellant employed the Maryland Title Company to search the title to

the property, and it reported to it that, on September 23rd, 1918, the Wagners and other persons owning property in the vicinity of Back River had joined in a release to the Mayor and City Council of Baltimore, in which they agreed for themselves, their heirs and assigns, and their successors in title to the lands respectively owned by them, to release the Mayor and City Council of Baltimore, its successors and assigns, from "all damage, suits, claims and demands for damages at law or in equity, which we and our successors and assigns, as aforesaid, now have or claim to have or may hereafter have or claim to have against the Mayor and City Council of Baltimore, its successors or assigns, by reason or on account of the location, erection, existence and operation by the said Mayor and City Council of Baltimore, of a plant for the collection and disposal of sewage from the City of Baltimore, on or near the southwesternmost shore line of the waters of Back River, in Baltimore County aforesaid, and on the property of the Mayor and City Council of Baltimore, formerly the Willis property there located, hereby declaring ourselves fully satisfied and contented therewith." That release was duly acknowledged and recorded on October 8th, 1918, among the Land Records of Baltimore County. Upon being informed of its existence the appellant refused to consummate the purchase of appellees' property and demanded that they return the $1,000 paid them on account thereof. They refused that demand, and on January 5th, 1927, filed in the Circuit Court for Baltimore County a bill against the appellant, in which they prayed that it might be required to specifically perform its contract for the purchase of the property. The defendant answered, testimony was taken, the case was heard, and at its conclusion the court granted the relief prayed. This appeal is from that decree.

The only defence asserted by the appellant was that the release to which we have referred so affected the property described in the contract as to render the title thereto unmarketable. And its contention in regard to that is that the release forever estops any owner of the land in question

from complaining of the establishment, maintenance, or operation by the City of Baltimore of its sewage disposal plant on Back River, that consequently it imposes a servitude on the land in favor of the City of Baltimore, which may injuriously affect the property, and which therefore is a cloud on appellees' title thereto. It concedes that it knew of the location of the plant when it bought the property, but asserts that it did not know of the release, so that its definite and specific objection is that the release deprives it of any right or privilege of suing the city for damages occasioned by its operation of the plant which may accrue hereafter. Aside from that objection, it is admitted that the contract is fair, untainted by fraud, mutual, and that the title to the property is good. So that the only question presented by the appeal is whether the fact that no owner of the property in question can sue the Mayor and City Council of Baltimore for damages resulting to it from its operation or maintenance of the disposal plant at its present location renders the title of the appellees thereto unmerchantable. In our opinion it does not, for several reasons, any one of which would be a sufficient answer to the objection.

(1) In considering the force and validity of that objection, it is important to know in what manner and to what extent the normal operation of the disposal plant affects the land in controversy, and concerning that, the record affords no information whatever, except that the disposal plant is about a mile from the property, and that, while there is an odor from it, it does not affect the property much, and because at the time the contract was executed appellant knew of the condition and used it to beat down the purchase price. The disposal plant was constructed under the authority of chapter 349 of the Acts of 1904, is a part of the sewerage system of Baltimore City, and in the very nature of things is of a permanent character. As has been stated, it is so far removed from the property that no inference of damage can be inferred from its propinquity thereto, and, in the absence of any evidence justifying such a conclusion, it cannot be assumed that the normal operation of the plant would create

conditions which would damage the appellees' property. In the case of *Taylor v. Baltimore,* 130 Md. 133, decided in 1917, it was proved that this same disposal plant was so operated as to cause an actionable nuisance, but that case was decided upon the plaintiff's testimony alone, and no such condition is proved or even alleged in this case, and such testimony as there is is to the contrary. But in that case the court strongly intimated that the establishment of the plant was not a nuisance *per se,* for it said: "We find nothing in the statute under which the city is acting suggestive of an intention of the Legislature to authorize the city authorities to commit a nuisance. Nor can it be said that the Legislature contemplated that the performance of what is authorized to be done would necessarily or even probably result in such damage to private property as the plaintiff complains of. If it had been so understood by the members of the Legislature, is it not reasonable to assume, especially as the city was authorized to extend its works into the counties, that provision would have been made for compensation of those whose properties would be injured?" If, therefore, the existence and normal operation of the plant does not damage appellees' property, it is difficult to see how the vendor's title to the property is rendered unmerchantable by the fact that he is estopped from claiming damages which will never accrue.

But the appellant contends that, while that may be true, it does not follow that, because the plant as now operated is not a nuisance, the municipality may not at some future time so negligently operate it as to cause loss and damage to the property greater and different from that which would result from its normal operation in a reasonably prudent, skillful, and careful manner, and that, even in such an event, the release would bar the owners of the property from seeking relief from the consequences of such negligence. But it was said in the case of *Taylor v. Baltimore, supra,* that there is nothing in the act to suggest that the Legislature in authorizing the establishment of the plant intended to authorize the City of Baltimore to create a nuisance, and still less does

it indicate that it intended to authorize it to inflict injury or damage on persons or property by the wrongful and negligent failure of its agents and employees to exercise reasonable care in the management and operation of the plant. And whether or not the release bars the appellees and their successors in title from claiming damages occasioned by the negligent operation of the plant by the municipality, it does not bar them from procuring the abatement of any unnecessary nuisance caused by the negligence of the municipality, its agents, or employees. There is nothing in any existing statute to which our attention has been called to warrant the inference that the Legislature has authorized the municipality to create a nuisance by its negligent acts, nor can we assume that it will do so in the future. *Pope v. Clark*, 122 Md. 11.

If the operation of the plant in a reasonably prudent and careful manner necessarily creates a nuisance which injures the appellees' property in some manner different in character or degree from the inconvenience loss or damage suffered by the general public, the owners thereof would be entitled to compensation (*Taylor v. Baltimore, supra*), and all such damages are covered by the release. But while at the time the release was made the appellees may have been entitled to damages resulting from the normal operation of the plant in a reasonably careful and prudent manner, or which may have accrued up to that time from the negligence of the municipality, they would not have been entitled to recover for any loss which might be occasioned by future negligence. And the release itself does not indicate that the municipality intended to acquire the privilege of creating a public nuisance by its negligence.

(2) If therefore the release only applied to such damages as resulted from the usual and normal operation of the plant in an ordinarily prudent and careful manner, it is no defense to the appellees' demand for a specific performance of the contract under consideration in this case. The appellant knew of the existence of the plant, for he used that fact in an effort to beat down the price of the property, as will appear

from this extract from the testimony of Henry W. Wagner, which was not contradicted: "Mr. Donohue himself came in, Mr. Thomas Donohue came in there first, and he asked me to wait for his father, and his father came and asked me to come in the office. He said, 'You have a nice piece of property and I like the property very much, but what is the best will buy it.' I said, 'I quoted you $4,000.' I said, 'What is it worth to you?' He said, 'It is not worth $4,000,' and I said, 'Suppose we knock off $250 an acre.' He said, 'Well, it is a nice piece of property. Back River has a hard name and more particularly the sewerage is there, and you know we are going to take a chance and it is not worth any more than $2,500 an acre to me,' and I hesitated for a moment and thinking the best offer we had a few years previous was $1,000 an acre, and I said, 'All right, are you ready to settle up now.'" He must have known too that it was of a permanent character because no other inference was possible under the circumstances. Knowing that, he must be presumed to have known that such damages to the property, past, present, and future, occasioned by the location, establishment, or operation of the plant in a normal manner, accrued to the person or persons owning the property at the time the conditions causing the damage first came into existence, and must have been recovered by such person or persons in one action (*Sedgewick on Damages,* par. 95; *Wood on Nuisances,* par. 869; 29 *Cyc.* 1273), and that such action must have been brought within the period fixed by the statute of limitations, which began to run when the conditions causing the damages first came into existence. 37 *C. J.* 885 *et seq.* But although the appellant knew of its existence, the contract which he executed does not refer to any assignment of any claim which appellees may have had for damages to their property caused by the establishment or operation of the disposal plant, and he must have known that he was not buying that claim in addition to the property, for otherwise he would not have used the possible damage as an argument to lower the purchase price of the property.

(3) The mere fact that the operation of the disposal plant may be offensive to persons occupying appellees' property may affect its desirability, or its market value, but it is not apparent how it can affect their title to it, any more than the location of any other legal nuisance affects the titles of adjacent property which may be affected by it. And where at the time the contract was made the appellant knew of its existence, its character, and knew that it was legally authorized and permanent in its character, its existence is no defence to a demand for the performance of his contract. And since the contract is valid, and conforms in all other respects to the rule applicable in such cases, it follows that the decree appealed from will be affirmed.

*Decree affirmed, with costs.*