Charles M. PASCAL
v.
Philip HURWITZ.
Civ. A. No. 10463.

United States District Court
D. Maryland.
April 8, 1959.

 

Raphael Walter, Lawrence I. Weisman, Nyburg, Goldman & Walter, Baltimore, Md., Harold Leventhal, Ginsburg, Leventhal, Brown & Morrisson, Washington, D. C., for plaintiff.

Henry G. Burke and Paul R. Kach, Baltimore, Md., for defendant.

R. DORSEY WATKINS, District Judge.

On April 3, 1958, the first complaint herein was filed. Defendant filed a motion for a more definite statement, which motion was granted after hearing. Thereafter an amended complaint was filed.

The amended complaint alleges that on or about June 30, 1947, the entire issued capital stock of District Distributors, Inc., (District), a wholesale liquor distributing company, operating in the District of Columbia, was acquired by a new management headed by defendant; that at all times since such acquisition, defendant has been and is the president and a director of District, and the owner of more than fifty per cent of its common stock, and directly or indirectly of more than fifty per cent of its preferred stock, and has exercised control of all financial aspects of District's operations; and that defendant owned and owns all the stock of RWL Wine and Liquor Company, Inc., (RWL) now known as Embros Wine Company, Inc., a Maryland corporation.

It is further alleged that in 1947 by agreement between plaintiff and defendant, it was mutually agreed that (a) plaintiff would leave his position with Brown-Forman Distillers Corporation, a national distiller and wholesaler of whiskey, to become general manager of District; (b) plaintiff would buy, and defendant would sell to plaintiff, eight per cent of District's outstanding common and preferred stocks; (c) that said stock could be retained by plaintiff only so long as he was employed by District or some other corporation in which defendant had a controlling interest, and that in the event of termination of such employment, defendant would repurchase, or cause

District to repurchase, and plaintiff would sell, plaintiff's stock in District "at its value as shown on the latest audited financial statement of [District] prior to the termination of the employment", this latter agreement being oral; that pursuant thereto, plaintiff left his then employment, commenced his employment as District's general manager in July 1947, and purchased eight per cent of District's common and preferred stocks, the stock certificates containing the recital:

> "This stock is held subject to all the terms, covenants and conditions set forth in stockholders' agreement effective as of September 29, 1947."

On July 6, 1951, as the result of a stock dividend, plaintiff became and is the owner of 200 shares of the common stock and 120 shares of the preferred stock of District. In April 1955 defendant "dismissed" plaintiff from his position as District's general manager, and plaintiff has not since held any employment with any corporation controlled by defendant. Plaintiff subsequently demanded of defendant and of District that plaintiff's stock "be repurchased in accordance with the 1947 stockholders' agreement", but defendant has refused to purchase or to cause District to purchase such stock, defendant "asserting that there was and is no agreement for the repurchase" of plaintiff's stock.

The amended complaint further alleges that prior to plaintiff's dismissal in April 1955, defendant "in violation of his fiduciary duties as president, director and majority and controlling stockholder" of District, subordinated the interest of District to his own interest, deriving "profit or advantage from his position in conflict with his fiduciary duties," and specifically caused District to reduce its earnings and to "swell the profits and income" of defendant and of his wholly owned company, RWL.[1]

The amended complaint concludes with the averments that plaintiff still tenders his stock for repurchase, and that "there is no readily ascertainable or reasonable market value of the stock, and there is no adequate remedy in damages." The prayers are for specific performance; a judgment that the repurchase agreement requires the purchase of plaintiff's stock not at book value as of September 30, 1954, but at the "true book value" adjusted to take into account defendant's acts allegedly increasing defendant's profits and decreasing District's profits, net worth and stockholders' equity; an accounting of profits realized by defendant at the expense of District; if specific performance is not granted, a judgment against defendant for $100,000 with interest from April 15, 1954 [1955?]; and for other and further relief.

Defendant filed a motion to dismiss on the grounds that the amended complaint failed to state a claim against defendant upon which relief can be granted; that the alleged cause of action did not accrue within three years next before the commencement of the action; that fraud was not alleged with sufficient particularity; that plaintiff was barred by laches; that District was an indispensable party, but if joined, the court would lack venue; that the alleged oral repurchase agreement was within the sales and year clauses of the Statute of Frauds; and that any cause for mismanagement would belong solely to District.

After the filing of briefs, and a hearing, the motion to dismiss was denied.[2]

---

1. This alleged misconduct includes bulk and bottled wine transactions between District and RWL, to the detriment of District and the benefit of RWL; the payment by District for services in fact rendered to RWL; the payment by District to defendant of salaries and bonuses "unconscionable" in view of defendant's services; and by paying interest to RWL on debit balances improperly created.

2. An oral opinion was rendered from the bench, and has not been reported for publication. The court was of course restricted to the face of the complaint, and required to construe the allegations

Defendant's answer to the amended complaint denies that defendant ever sold any stock in District to plaintiff, or ever entered into any agreement with plaintiff to purchase District stock from plaintiff; raises limitations, "laches and/or acquiescence" of plaintiff barring "him from any right to the claimed remedy of specific performance, or any other equitable remedy"; and asserts that the alleged contract and claims are unenforceable under the "goods, wares and merchandise" provisions of Maryland Code of Public General Laws, 1957 Edition, Article 83, section 22.

Defendant's Seventh Defense and Eighth Defense read as follows:[3]

"Seventh Defense.

"The defendant avers that prior to the plaintiff's being discharged as General Manager of District Distributors, Inc. in April of 1955, the plaintiff engaged in certain activities which should not have been engaged in by one drawing a salary from an employer without full disclosure to the employer and which involved interference with agreements between District Distributors, Inc. and its manufacturing suppliers of whiskeys and that were contrary to the best interests of District Distributors, Inc. and which resulted in plaintiff's obtaining for a corporation controlled by himself the franchise for the distribution of Schenley Whiskies, which franchise had previously belonged to District Distributors, Inc. The plaintiff's activities resulted in a very great loss to District Distributors, Inc. and greatly depreciated the value of the stock of plaintiff and defendant and others in District Distributors, Inc. Defendant therefore avers that plaintiff,

in the amended complaint in the light most favorable to plaintiff. Accordingly, it was conceivable that a demand to repurchase could have been made promptly upon plaintiff's dismissal, but the refusal might have occurred within three years of bringing suit. Moreover, the undisclosed provisions of the stockholders' agreement of September 29, 1947 might have specified the time and manner within which the demand and refusal must occur, which might well have made the suit timely.

Even if fraud were not alleged with the particularity required, this would not be grounds for dismissal.

Laches, if any, of plaintiff, would bear not upon the right to recover if there were a repurchase agreement, but would relate only to whether or not plaintiff could recover for harm from alleged misconduct of defendant during the time plaintiff was general manager. Moreover, the amended complaint did not disclose any reliance by defendant upon action or inaction by plaintiff.

The court concluded that on plaintiff's theory of his cause of action, District not only was not an indispensable party, but would not be a proper party. The suit is not a stockholder's derivative action. Plaintiff is not seeking as a stockholder to have returned to the corporation, and therefore indirectly to his own benefit, assets, or money to which District would be entitled from a wrongdoing officer, director and majority stockholder. Plaintiff wishes to have his stock purchased, and to cease to be a stockholder. Under the alleged repurchase agreement, the book value is simply the measure of the price to be paid by defendant or District.

As to the "goods, wares and merchandise" clause (Maryland Code of Public General Laws, 1957 Edition, Art. 83, section 22), the stockholders' agreement of September 29, 1947 again might constitute an adequate written memorandum. Further, the court believes the Maryland Court of Appeals would decide the law to be as set forth in A.L.I. Restatement of Contracts, section 206, that an undertaking to repurchase shares of stock, made as part consideration for the initial purchase, would take the transaction out of the Statute of Frauds.

Since for all that appears from the amended complaint plaintiff's employment might have been expressly at will, or during good behavior or so long as his services were satisfactory, the court could not, on motion to dismiss, hold that the year clause of the Statute of Frauds would necessarily be applicable.

3. Plaintiff has moved to strike these defenses, hence the quotation of their text, rather than a paraphrase.

who was the Vice-President, General Manager, only resident officer, a stockholder and director of District Distributors, Inc., does not come into equity with clean hands and is barred from any relief in equity."

"Eighth Defense.

"As a result of the matters set forth in the Seventh Defense of the defendant, the defendant contends that to enforce an alleged agreement to purchase stock at its value on September 30, 1954 when the plaintiff's actions from September 30, 1954 until April 5, 1955 and thereafter resulted in a substantial decrease in the book value from the figures as of September 30, 1954 would be unconscionable and the plaintiff is thereby barred from any such relief in equity."

Defendant's Ninth Defense is his answer to the allegations of the amended complaint. For the decision of the issues presently presented for ruling, it will not be necessary to attempt a general summary of this answer, which is (perhaps understandably) rather detailed in explanatory averments. It should be noted, however, that this defense specifically denies (a) that District's stock was purchased by plaintiff from defendant, and alleges a purchase by plaintiff from others; and (b) the existence of any agreement to repurchase plaintiff's stock at any time. It asserts, as follows, that plaintiff comes into court with unclean hands:[4]

" * * * 6. Answering Paragraph 6 of said amended complaint, defendant says that the facts and circumstances leading to plaintiff's leaving the employ of the company on April 5, 1955 relate to acts which, in the defendant's, opinion, involved interference by the plaintiff with agreements between the corporation and its manufacturing suppliers of whiskey, and further involved such acts that were contrary to the corporation's best interests and the plaintiff's duties to the corporation, all of which resulted in litigation now ended and disposed of. The defendant avers that the said actions of the plaintiff resulted in the loss of the Schenley franchise by the corporation, District Distributors, Inc., (the Schenley franchise was immediately transferred to a corporation, Pascal, Inc., which was controlled by plaintiff) and thereby immediately greatly reduced the value of the stock held by both the plaintiff and the defendant and others in District Distributors, Inc., and forced the corporation, District Distributors, Inc. to suffer extensive losses in the period from April 5, 1955 until March of 1957, by which time District Distributors had been able to obtain sufficient new lines to once again operate on a profitable basis. Plaintiff's said activities forced the remaining officers of District Distributors, including the defendant, to exert great efforts, which could not be properly compensated for by the corporation, in order to prevent the complete destruction of the corporation, which would have resulted in an even more substantial loss in the value of the stock of both the plaintiff and the defendant, and others. The defendant further avers that the plaintiff's said activities clearly indicate that the plaintiff is not coming in to equity with clean hands, and has not done equity and therefore is not entitled to any equitable relief."

The answer avers that plaintiff was not dismissed, but "quit" voluntarily. It denies any breach of duty by defendant to District, and asserts that the acts allegedly to the detriment of District[5] were done in good faith, and upon the

4. Plaintiff has moved to strike this paragraph.

5. See footnote 1.

advice of, or with the knowledge, approval or acquiescence of, plaintiff.

Plaintiff has moved to strike defendant's Seventh Defense, Eighth Defense, and the first paragraph of paragraph 6 of defendant's Ninth Defense, all quoted above. This motion is associated with a motion by plaintiff to limit the issues, and with plaintiff's refusal to answer certain questions, and to produce papers, relating to his conduct and activities, prior to April 1955. Plaintiff contends that defendant should by order be prohibited from raising by way of defense to the merits or in mitigation of damages, any issue regarding the value, qualifications or loyalty of the services rendered by plaintiff to District during the period of his employment with District; the circumstances under which plaintiff's employment with District was terminated; plaintiff's relationship with Schenley Industries, Inc. or any of its subsidiaries, either prior or subsequent to termination of plaintiff's employment with District; or any alleged breach of plaintiff's fiduciary duty to District. This very unappetizing contention is based upon the claim that these issues were the subject of a complaint in the United States District Court for the District of Columbia in "District Distributors, Inc., et al. v. Schenley Industries, Inc., et al., Civil Action No. 4519–55", which suit was dismissed by the plaintiffs therein with prejudice, and in conjunction with which releases were executed.

From the papers filed in support of plaintiff's motions, the authenticity of which is not controverted by defendant, it appears that in said Civil Action No. 4519–55, the plaintiffs were four corporations, including District and RWL, in which the defendant herein was the sole or controlling stockholder, and the defendants were Schenley Industries, Inc., and an affiliate; the plaintiff herein as an individual; Pascal, Inc.; Morris A. Kasoff; as an individual (Kasoff); and Key Wine and Liquor, Inc. Recovery of $3,000,000 was sought for injuries for the removal by the Schenley defendants from the Hurwitz companies and the transfer to Pascal of exclusive wholesale distribution of Schenley products in the District of Columbia, as a result of secret and conspiratorial negotiations continuing into 1955 between Pascal and Schenley, in violation of Pascal's fiduciary duties to District; and similar negotiations resulting in the transfer of the Schenley distributorship in Maryland from RWL to Kasoff, an employee of RWL. Pascal and Pascal, Inc. answered, denying all material allegations. After the Hurwitz plaintiffs had taken depositions of the Pascal defendants, a settlement was reached. On March 3, 1958, Schenley made a payment of $65,000 to the attorneys for the Hurwitz plaintiffs, the plaintiffs dismissed the case with prejudice, and general releases were exchanged between Hurwitz and the four plaintiff corporations, and Pascal and the other five defendants. A similar disposition was made of Action at Law 5134 in the Corporation Court of the City of Alexandria, Virginia brought by Affiliated Distillers Brands Corporation against District on a promissory note on which District was claimed to owe a balance of some $200,000 as to which District claimed certain credits and setoffs against Schenley.

In one of these releases, dated March 3, 1958, Hurwitz and his corporations (including District) released Pascal and others from all claims [6] "excepting only claims of District Distributors, Incorporated, totalling not more than Forty-Seven Hundred Fifty Dollars ($4,750.00) against Charles M. Pascal, which are allegedly reflected on its books of account and arise out of its former employment of him."

In the other release, of the same date, Schenley, Pascal, et al., released Hurwitz

---

**6.** And twenty-five other various and assorted nouns descriptive of genera, species, types and kinds of claims.

and his four corporations, from all claims [7] "excepting (1) all claims arising out of the ownership by Charles M. Pascal and Morris A. Kasoff of stock in District Distributors, Incorporated, and Contract Brands Corporation, together with any or all claims [8] arising out of and any or all claims based on any alleged agreement for the sale of such stock; and (2) a claim by Charles M. Pascal against District Distributors, Incorporated, for alleged unpaid compensation in an amount not exceeding twenty-five hundred ($2500) dollars."

To the court, it seems that defendant herein ascribes greater technical effect to the releases than plaintiff. In the first paragraph of paragraph six of its Ninth Defense, defendant refers to plaintiff's conduct, prior to leaving the employ of District on April 5, 1955, as contrary to District's interests and plaintiff's duties "all of which resulted in litigation now ended and disposed of." Plaintiff, in his motion to limit issues, states his position to be that the releases, both on their face, and "especially if account is taken of a *full presentation of the purposes and considerations advanced in the settlement negotiations,*[9] contemplated acquittance against and cessation of any assertion in lawsuit by Hurwitz or the corporations controlled by Hurwitz based on the allegations set forth in Civil Action 4519–55 or similar allegations."

In the hearing on the motions, counsel for defendant herein conceded that no claim was made that the releases were invalid or voidable. In their memoranda after hearing, counsel for plaintiff stated that for purposes of simplifying the issues, if the court granted their motions to limit the issues and to strike portions of defendant's answer, they would abandon paragraph 8 of the amended complaint under which plaintiff sought to augment the stated book value of District's common stock as of September 30, 1954, because of defendant's alleged wrongdoing.

The court would be happy to adopt a Solomonic [10] or Gordian knot approach were it possible, but unfortunately feels constrained to decide the questions on the record presented. The releases of March 3, 1958, seem to the court clearly to relieve plaintiff of any accountability for his misconduct, if any (as to which the court has no proof, as distinguished from allegations) prior to that date insofar as District and Hurwitz are concerned. The court will therefore grant the motion to strike the Seventh and Eighth Defenses, and the first paragraph of paragraph 6 of the Ninth Defense, insofar as they purport to be defenses in toto to relief to plaintiff. The releases have sufficient detergent effect to cleanse the hands of plaintiff as a suitor. This will likewise "limit the issues" to the extent that defendant will not be permitted to introduce evidence of plaintiff's alleged dereliction in duties as a "defense to the merits or in mitigation of damages."

This will not, however, prevent defendant from endeavoring to develop, through discovery, and to offer evidence, of any dereliction of plaintiff in his duty toward District prior to the termination of his employment with District. Such evidence, if there be such, will not bar his rights of action, but as the case is presently presented, it appears to the court would be relevant on at least two critical aspects. (1) The fundamental question of whether or not there was an agreement to repurchase plaintiff's stock, and if so, of what nature, will apparently become one of credibility of witnesses,

---

7. Same as above.

8. With no synonyms.

9. Emphasis supplied. See Shinn v. Eagle-Picher Mining & Smelting Co., 8 Cir., 1949, 172 F.2d 717, 720 (cited by plaintiff), and Donohue Realty Co. v. Wagner, 1928, 154 Md. 588, 141 A. 337, and Arthur v. Morrow Bros., 1917, 131 Md. 59, 101 A. 777, L.R.A.1918A, 400 (cited by defendant).

10. 1 Kings: Chapter 3, verses 16–28.

rather than an interpretation of documents. The reliance the court would place upon the testimony of a witness might well be materially affected by the character of the witness as demonstrated by his readiness to betray a position of trust and confidence [11]; (2) while plaintiff claims that the measure of value, for purposes of repurchase, is book value as of September 30, 1954,[12] the court is very dubious that plaintiff could claim the benefit of a fictitious book value of that date, were he the author of the fiction. Granted that the releases of March 3, 1958, relieve plaintiff of any personal liability for his breach of trust, if any, the court is not persuaded that he may take advantage of his own (supposititious) wrong. Specifically, if plaintiff had, before September 30, 1954, entered into negotiations that would deprive District of a valuable and allegedly perpetual exclusive distributorship, which fact was not known to District, its other stockholders, officers, directors or auditors, the court is not prepared to say that under these circumstances plaintiff could claim the stated, but clearly erroneous, book value as the conclusive measure of the amount to be paid him for his stock. Such wrongdoing would go, not in true mitigation of damages, but toward determining what plaintiff's damages actually are. As on his theory plaintiff is entitled to be paid for his stock not out of, but measured by, its true book value, if he has by his own acts reduced such true book value (and has not in effect restored it by virtue of the releases) he has himself reduced the amount he would be entitled to receive. Such conduct may also conceivably be relevant on the validity of the contention that defendant was paid "unconscionable" salaries and bonuses.

An appropriate order will be signed on submission.

11. Whether the witness be plaintiff or defendant.

12. If the concession of counsel be applicable; or such book value augmented to

reflect defendant's alleged derelictions in duty, as claimed in the amended complaint.