Joseph I. GOLDSTEIN, Shirley H. Goldstein and Star Enterprises, Ltd., Appellant,

v.

POTOMAC ELECTRIC POWER COMPANY, Appellee.

No. 77–1658.

United States Court of Appeals, Fourth Circuit.

Argued May 1, 1978.

Decided June 26, 1978.

As Amended Aug. 3, 1978.

Stephen D. Annand, Alexandria, Va. (Geoffrey Judd Vitt, Cohen, Vitt & Annand, Alexandria, Va., on brief), for appellant.

Hal C. B. Clagett, Upper Marlboro, Md. (Nicholas D. Ward, Thomas E. O'Dea, Washington, D. C., on brief), for appellee.

Before WINTER, BUTZNER and HALL, Circuit Judges.

WINTER, Circuit Judge:

Plaintiffs, Joseph I. Goldstein, his wife Shirley H. Goldstein and their wholly-owned corporation Star Enterprises, Ltd., appeal from a decision of the district court dismissing their suit against Potomac Electric Power Company (Pepco) as barred by Maryland's three-year statute of limitations, Ann.Code of Md., Cts. & Jud.Proc., § 5–101 (1974). Because we conclude that the applicability of § 5–101 to the facts of the instant case presents a potentially dispositive question of state law as to which there appears no controlling precedent in the Maryland case law, we certify the questions set out in Part II of this opinion to the Maryland Court of Appeals, pursuant to that state's certification statute, Ann.Code of Md., Cts. & Jud.Proc., §§ 12–601 et seq. (1974).

I.

The facts relevant to the question to be certified are not in serious dispute. In 1964, the defendant commenced operating its Chalk Point generating station (Chalk Point) at Aquasco, Prince George's County, Maryland. At that time the individual plaintiffs owned a 500-acre tract of land, known as Cedar Beach Farm, located across the Patuxent River from Chalk Point at a distance of approximately two miles. In 1967, the Goldsteins purchased an additional 1100-acre tract, known as Maxwell Hall, located some three-tenths of a mile from Chalk Point. The Goldsteins sold the Maxwell Hall property to plaintiff Star Enterprises in 1967. Star Enterprises is a Maryland corporation, wholly-owned by the Goldsteins.

On November 21, 1974, plaintiffs filed this action in the district court.[1] Jurisdiction was based upon diversity of citizenship between the parties and the requisite amount in controversy. 28 U.S.C. § 1332.

In their complaint, plaintiffs alleged that the air, water and noise pollution emanating from defendant's Chalk Point station constitutes an actionable nuisance under the common law of Maryland and that Pepco was negligent in failing to install state-of-the-art pollution control equipment on its Chalk Point plant. In pretrial proceedings, plaintiffs withdrew their claims for damages based on negligence and on water pollution. Thus they claim an actionable nuisance only from air and noise pollution.

While the complaint prayed both damages and injunctive relief, when the case came before the district court on defendant's motion for summary judgment, plaintiffs had limited the relief sought to "permanent" damages—that is, monetary relief in an amount equal to the diminution in market value of plaintiffs' properties as a result of defendant's Chalk Point opera-

---

1. Litigation between the parties was first instituted in February, 1972, when plaintiffs filed suit in the Circuit Court for Prince George's County, Maryland, alleging the same wrong and praying the same relief as in the instant action. After extensive discovery and on the day trial was to commence, plaintiffs took a voluntary dismissal in the state proceeding. Six months later they filed this action in the United States District Court for the District of Columbia. By order dated March 5, 1975, the case was transferred to the District of Maryland, where it was ultimately decided.

tions. In oral argument before us, counsel for plaintiffs characterized their action as one solely for damages for permanent nuisance and said that they were seeking one recovery for all damages, past, present and prospective.

In their complaint, plaintiffs allege that the injuries of which they complain commenced when operation of the Chalk Point plant began in 1962 and were aggravated when the size of the plant was expanded at later dates. The parties stipulated that Unit No. 1 of the Chalk Point plant became operational on October 31, 1964, that Unit No. 2 became operational on April 19, 1965, and that Unit No. 3 commenced operations—partially on May 19, 1975, and fully on June 6, 1975. Units Nos. 1 and 2 are coal fired; Unit No. 3 is oil fired. The parties stipulated that the level of the alleged particulate pollution of which plaintiffs complain has not been significantly greater since November 21, 1971, than before.

In its answer and again in its motion for partial summary judgment, Pepco raised the bar of the statute of limitations, Ann. Code of Md., Cts. & Jud.Proc., § 5–101 (1974).[2] Briefly stated, defendants make the following argument: Plaintiffs pray

damages for a permanent nuisance. Where the nuisance alleged is permanent, the statute of limitations runs from the commencement of that nuisance. Since plaintiffs concede that the Chalk Point operations about which they complain commenced prior to November 21, 1971 (the date three years immediately prior to the filing of suit), it follows that their suit is barred by § 5–101.

■ Plaintiffs counter that this approach is too formalistic, that the more modern rule permits a landowner to seek permanent damages for a continuing nuisance even though the nuisance commenced more than three years before the institution of suit.[3] Otherwise, suggest plaintiffs, a party operating a nuisance can gain a prescriptive right to interfere with another's use and enjoyment of land after only three years.[4] Under plaintiffs' theory, § 5–101 may well limit past *damages* to no more than three years, but it erects no bar to present and prospective permanent damages so long as the period for obtaining prescriptive rights has not run.

Relying on dicta in a case decided fifty years ago by the Maryland Court of Appeals, *J. T. Donohue Realty Co. v. Wagner*, 154 Md. 588, 141 A. 337, 339 (1928),[5] the

**2.** Section 5–101, Ann.Code of Md., Cts. & Jud. Proc., provides that "[a] civil action at law shall be filed within three years from the date it accrues unless another provision of the Code provides a different period of time within which an action shall be commenced."

**3.** As authority for this view, plaintiffs cite Professor McCormick's seminal article Damages for Anticipated Injury to Land, 37 Harv.L.Rev. 574 (1924).

**4.** In Maryland, a person may acquire by prescription the right to maintain a private nuisance, however, to establish such right the nuisance must be uninterrupted and continuous for a period of twenty years. *Caretti v. Broring Bldg. Co.*, 150 Md. 198, 132 A. 619 (1926); *Susquehanna Fertilizer Co. v. Malone*, 73 Md. 268, 20 A. 900 (1890). *Cf.* Ann.Code of Md., Cts. & Jud.Proc., § 5–103(b)(1).

**5.** In *Donohue*, a vendor brought suit to compel specific performance of a contract for the sale of certain real property. The purchaser had refused to consummate the sale upon finding that the vendor had previously released the

Mayor and City Council of Baltimore from all claims for damages arising out of the operation of a nearby city sewage facility. In granting specific performance, the Court of Appeals observed that the purchaser "knew of the existence of the plant, for he used that fact in an effort to beat down the price of the property . . . ." 141 A. at 339. Then follow the dicta upon which the court below relied:

He must have known too that it was of a permanent character, because no other inference was possible under the circumstances. Knowing that he must be presumed to have known that such damages to the property past, present, and future occasioned by the location, establishment, or operation of the plant in a normal manner accrued to the person or persons owning the property at the time the conditions causing the damage first came into existence, and must have been recovered by such person or persons in one action (Sedgwick on Damages, par. 95; Wood on Nuisances, par. 869; 29 Cyc. 1273), and that such action must have been brought within the period fixed by the statute of limitations which began to run when the condi-

district court concluded that defendant's theory was consonant with Maryland law and that, therefore, plaintiffs' suit was barred by § 5–101. Accordingly, the district court entered judgment for defendant.

█ Because we are not as certain as the district court that the Maryland Court of Appeals, if confronted with the facts of the instant case, would hold the suit barred by § 5–101, we avail ourselves of Maryland's certification procedure so as to obtain an authoritative answer to this question.

## II.

Accordingly, we certify the following question to the Maryland Court of Appeals:

Where a nearby landowner seeks permanent damages from a public utility company whose operations constitute a continuing nuisance, is plaintiff barred by reason of Ann.Code of Md., Cts. & Jud. Proc., § 5–101, from bringing suit more than three years from the date that the landowner alleges that the nuisance commenced?

Part I of this opinion shall constitute the statement of relevant facts required by the Maryland certification procedure, Ann.Code of Md., Cts. & Jud.Proc., § 12–603(a)(2).

To afford counsel the opportunity to comment upon both our statement of the relevant facts and the proposed question prior to certification and to suggest modifications thereof, the formal certification order will be stayed for fourteen days from the filing of this opinion. Any comments or suggestions filed by counsel within this time period will be taken under advisement and the facts and the question will be modified as we deem proper. Our formal order of certification will provide that all fees and costs in the Maryland Court of Appeals shall be equally divided between the parties. *United States v. Baldwin et al.*, 575 F.2d 1097 (4 Cir. 1978).

*AN ORDER WILL ISSUE.*

tions causing the damages first came into existence. 37 C.J. 885 et seq. *Id.*

Counsel has not cited and we have not found any more pertinent Maryland authority.