## SHINN v. EAGLE-PICHER MINING & SMELTING CO.

### No. 13829.

United States Court of Appeals
Eighth Circuit.

Feb. 23, 1949.

Lloyd E. Roberts and Vern E. Thompson, both of Joplin, Mo., and Wayne Slankard, of Neosho, Mo., for appellant.

A. E. Spencer, Jr., of Joplin, Mo., for appellee.

Before SANBORN, WOODROUGH, and THOMAS, Circuit Judges.

THOMAS, Circuit Judge.

In this case the appellant as plaintiff in the district court sought to recover from the defendant a 2% overriding royalty on lead and zinc ores mined by defendant under three leases granted by the owners of the land to another and assigned to the defendant. Right of recovery was denied by the defendant. The case was tried to the court without a jury. Judgment was entered for the defendant, and the plaintiff appeals. Jurisdiction is based upon diversity of citizenship.

The controversy involves the construction of written contracts in light of the purposes for which they were executed as shown by the instruments themselves and by the admissible testimony.

Lead and zinc ores had been found in Stark County, Missouri, prior to 1936. In that year the plaintiff was living with his father and mother, Frank R. and Birdie Shinn, at their farm home near Stark City. He knew of the presence of ores in the vicinity and was carrying on mining operations there in a small way.

In August, 1936, pursuant to an oral agreement, plaintiff, in consideration of a 2% royalty, procured for H. C. Urschel of Rush, Arkansas, mining leases upon his father, Frank R. Shinn's, land and two neighboring tracts owned by one Dungy and one Williams. These leases all reserved 8% royalties to the owners of the lands. The Shinn lease was dated August 10, 1936, and the Dungy and Williams leases September 14, 1936.

Pursuant to their oral agreement, aforesaid, Urschel and plaintiff, for themselves and "their heirs and assigns," executed a written agreement, dated January 12, 1937, by the terms of which,

"(1) For and in consideration of one dollar ($1) and other valuable considerations, receipt of which is hereby acknowledged, Harold C. Urschel does hereby agree to pay to Frank Shinn, Jr., Two percent (2%) of all ores mined and sold from the * * *" Shinn, Dungy and Williams lands.

This instrument was recorded October 6, 1937; and it is the basis of plaintiff's claim in this controversy. No ores, however, were mined on the Williams land, and the claim asserted in the plaintiff's Petition as to ores mined from that tract was abandoned.

Plaintiff was then employed by Urschel to carry on mining operations on the leased lands. Soon thereafter plaintiff was approached by the President of the Manda Industrial Company (hereinafter called Manda) with whom plaintiff orally agreed to assist Manda in procuring from Urschel a mining lease or subleases on the Shinn, Dungy and Williams lands in consideration for which services Manda agreed to make

plaintiff superintendent of the mines and to give him the difference between 15% royalty in ores mined from the land and the total royalty reserved in the original mining leases to Urschel and whatever additional royalty Manda would have to give to secure the mining rights.

The negotiations were successful, and on May 3, 1937, Urschel executed mining subleases to Manda covering the Shinn and Dungy lands in which sublease Manda agreed to pay to the owners of the land 8% of the market value of all ores mined or sold from the lands as reserved in the Urschel leases and to pay to Urschel in addition thereto 4½% of the market value of such ores. These subleases were recorded May 10, 1937.

On the day the subleases were executed, May 3, 1937, Urschel wrote a letter to Manda for attention of its President, saying:

"As a favor to me, I wish you would, in making your returns on the * * * leases made by me to your company today, remit direct to Mr. Frank R. Shinn, Jr., * *. * two percent (2%) of the gross value of the ores mined and sold under said leases, paying to me direct the remaining two and one-half percent (2½%) * * *.

"This authority shall continue in effect so long as you hold said leases."

Thereafter plaintiff was employed by Manda to supervise the prospecting and development of the mines on the leased land. He continued in this employment until the month of August, 1937. It then became obvious, that Manda was not financially able to operate the mines and that it would be forced to suffer a forfeiture of its leases unless it could find a responsible purchaser. Negotiations for the sale of the leases were begun with the defendant, but it was found that defendant could not be interested in assuming the several royalties reserved to the owners of the land and to the plaintiff. Further, a misunderstanding arose in reference to the overriding royalties claimed by the plaintiff. He insisted that he owned at least two such royalties: first, the 2% royalty created by the "Agreement" of January 12, 1937, between plaintiff and Urschel and payment of which by Manda was authorized by Urschel's let-

ter, supra, of May 3, 1937; and, second, a further 2% from Manda for services rendered under his oral agreement in procuring the subleases from Urschel to Manda. This last item he arrived at by subtracting 8% due the owners plus 4½% payable to Urschel, or 12½% from 15% which equals 2½%, only 2% of which was claimed by plaintiff.

These difficulties and misunderstandings were discussed by the parties interested personally and by correspondence for some time. The discussions culminated in a conference near Stark City, Missouri, on October 7, 1937, between the officers of Manda and plaintiff and his advisors. At that conference an agreement was reached and it was arranged that the parties would meet again on October 9th to reduce their agreements to writing and execute them.

At the meeting of the parties on October 9, 1937, two written contracts were executed. By the first of these contracts Manda granted to the plaintiff a royalty of 2% of the market value of all ores mined and sold under the mining lease dated October 10, 1936, from Frank R. Shinn to H. C. Urschel on the Shinn land in Stark County. This contract was recorded October 11, 1937. It will be observed that this contract does not include the leases on the Dungy and the Williams land.

The second contract executed on that day was a "Release." By its terms, and in consideration of the 2% royalty granted to plaintiff in the first contract executed that day, the plaintiff did "release and forever discharge The Manda Industrial Company of and from all claims, demands, actions and causes of action, of every kind and character, which I ever had or may now have against the said The Manda Industrial Company, its successors and assigns, and particularly I do hereby release and discharge the said Manda Industrial Company from all liability or obligation to pay any royalty or other sum to me, by reason of any mining operations conducted by said company on the Williams land * * * and on the Dungy land * * *, it being the intention hereof to release and discharge said company of and from all claims of every kind and character, of whatsoever nature, that I may have had, or now have,

or that may hereafter arise from mining operations conducted by said company in the vicinity of Stark City, Missouri, or the acquisition, possession, maintenance or operation of mining leases by said company, in said vicinity, and any and all other causes of action which I may have had, or now have against said company by reason of any matter whatsoever, save and except the rights granted to me this day under the conveyance to me by said company, first above described."

Thereafter, on November 20, 1937, Manda gave defendant, the Eagle-Picher Company, an option contract to purchase the Urschel mining leases on the Shinn, Dungy and Williams lands in which no mention is made of any overriding royalties owned by plaintiff on any of the lands. The option so granted was exercised February 16, 1938, since which time the defendant has carried on mining operations on all of the lands mentioned and has paid the plaintiff a 2% royalty on all ores mined on the Shinn land.

This action was brought in December, 1940, to recover an additional 2% royalty on the ores mined by the defendant on the Shinn, Williams and Dungy land. The claim is based upon the Agreement, supra, of January 12, 1937, by the terms of which Urschel granted plaintiff a 2% royalty on the ores mined from said lands. It was plaintiff's contention in the trial court, as it is here, (1) that the Urschel agreement was a covenant running with the land or an interest in land; (2) that the intention of the parties to the Release, supra, was not to release that royalty by the execution of the release; and (3) that the defendant had actual and constructive notice of the Urschel agreement and is liable for its payment.

The trial court found and held (1) that the Urschel agreement with plaintiff was not a conveyance to plaintiff of an interest in the ores mined from the properties described therein, but was a simple contract of personal obligation of H. C. Urschel to pay to plaintiff 2% of the value of all ores mined and sold from said properties by Urschel; and (2) that the release, supra, executed by plaintiff and Manda on October 9, 1937, is a general release executed by plaintiff, without fraud inducing such execution; that said general release premised on the valuable consideration of a conveyance to plaintiff of an interest in the ore mined on the Shinn Lease effectively released all claims, actions and causes of action of every kind which plaintiff had against Manda Industrial Company, including a release of the obligation of Urschel to pay plaintiff a 2% royalty and which Manda assumed; and that the provisions of the release are unambiguous and were such as to disclose the intentions of the parties thereto.

In the view we take of the record it is unnecessary to decide whether or not the Urschel agreement with plaintiff of January 12, 1937, to pay him a 2% royalty was a covenant running with the land or a simple personal obligation to pay him money. It was an obligation affecting the land which admittedly Manda assumed and which plaintiff claimed to be a royalty. That fact was in the minds of the parties at their conference of October 7, 1937. That conference was the result of the fact that Manda was then negotiating a sale of the leases to the defendant. Unless the negotiation should prove to be successful they knew that because of Manda's embarrassing financial condition all those interested in royalties or profits from operating the mines risked losing their interests by a forfeiture of the leases upon which their rights depended. In respect of the situation existing at that conference the plaintiff testified: "There was no dispute as to whether I would have to reduce my royalties to enable Manda to sell these leases. They told me I would have to reduce them and I agreed to it, * * * He (President of Manda) told me that they (the leases) were to be sold for 10 percent (Total royalties) but he thought he could get 2 more percent on out (the Shinn) ground * * *."

As to the intent of the parties to the contracts of October 9, 1937, supra, the testimony of the plaintiff and his advisors at the conference of October 7th and at the execution of the contracts on the 9th is in direct conflict with the testimony of the officers of Manda who were present. The plaintiff and his witnesses testified that it was stated then and there that the con-

tract and the release had nothing to do with the 2% royalty granted to the plaintiff in the Urschel Agreement while the officers of Manda denied that there was any such conversation and testified that the whole purpose of making the contract and release, on the other hand, was stated to be the clearing of the title to the leases and to assure plaintiff the 2% royalty given him in his agreement with Urschel; that every other claim of plaintiff was to be released so that the leases could be sold.

The trial court did not consider the relative weight of the oral testimony as to the construction of the release but held that it is unambiguous; that it is not tainted with fraud; that the clear, plain meaning of the language used negatives the claim of plaintiff in this case; and that plaintiff by executing these contracts under the circumstances and admitted facts released any and all claims, demands, actions and causes of actions of every kind and character which plaintiff had against Manda other than the 2% royalty granted to him in the contract of October 9, 1937.

The result reached by the court seems to be inescapable. The appellant argues most earnestly that the declaration of the trial court, supra, is also a finding of fact making it necessary to consider the evidence for the purpose of determining the intention of the parties. In support of this contention he cites 45 Am.Jur., Release, Sec. 28, where it is said:

"Generally the construction of the release as to the actual intent of the parties presents a question of fact to be determined from the surrounding conditions and circumstances, * * *."

And this court has said that a "release must be considered and construed in the light of the situation of the parties at the time it was formulated." Sunlight Carbon Co. v. St. Louis & S. F. R. Co., 8 Cir., 15 F.2d 802, 807.

The St. Louis Court of Appeals, in Ezo v. St. Louis Smelting and Refining Co., 87 S.W.2d 1051, 1053 (not in State Reports), said:

"Though the decisions are not as harmonious as might be wished for upon the question, we are nevertheless convinced that in the light of reason and the better precedent we must hold that in the execution of the written release in question the parties intended to express their entire agreement in the instrument as signed by plaintiff * * *".

We are convinced by a careful study of the record here that whether the question be held to be one of fact or of law or of mixed fact and law the result must be the same. The conclusion of the court as to the interest of the parties to the release is the only conclusion which can fairly be drawn from the written release; and, if the question is one of fact, the evidence in support of the court's conclusion is substantial and abundantly supports the finding. The testimony as well as the findings of the court has been reviewed above and need not be repeated here. The judgment appealed from must be, and it is accordingly,

Affirmed.