## JOSEPH I. GOLDSTEIN ET AL. *v.* POTOMAC ELECTRIC POWER COMPANY

[Misc. No. 4, September Term, 1978.]

*Decided August 21, 1979.*

674

The cause was argued before MURPHY, C. J., and SMITH, ELDRIDGE, ORTH and COLE, JJ., and reargued before MURPHY, C. J., and SMITH, ELDRIDGE, COLE and DAVIDSON, JJ., and RIDGELY P. MELVIN, Jr., and ALAN M. WILNER, Associate Judges of the Court of Special Appeals, specially assigned.

Argued and reargued by *Stephen D. Annand,* with whom were *Geoffrey Judd Vitt* and *Cohen, Vitt & Annand, P.C., B. Michael Rauh* and *Landis, Cohen, Singman & Rauh* and *Ernest F. Henry* on the brief, for appellants.

Argued and reargued by *Hal C. B. Clagett,* with whom were *Nicholas D. Ward* and *Thomas E. O'Dea* on the brief, for appellee.

MURPHY, C. J., delivered the opinion of the Court.

Pursuant to the Uniform Certification of Questions of Law Act, Maryland Code (1974), §§ 12-601 to 12-609 of the Courts and Judicial Proceedings Article, the United States Court of Appeals for the Fourth Circuit has certified for our consideration the following question of state law:

> "Where a nearby landowner seeks past, present and prospective damages for injuries to his property, measured by the diminution in its market value, from a public utility company whose operations allegedly have caused, are causing, and will cause daily air and noise pollution, is plaintiff barred by reason of Ann. Code of Md., Cts. & Jud. Proc., § 5-101, from bringing suit more than three years from the date that the landowner alleges that the injuries commenced?"

The statement of relevant facts, as set forth by the certifying court, discloses that in 1964 the Potomac Electric Power Company (Pepco) commenced operating its Chalk Point electric generating station at Aquasco, Prince George's County, Maryland. At that time, Joseph and Shirley Goldstein owned a 500-acre tract of land located across the Patuxent River from Chalk Point at a distance of approximately two miles. In 1967, the Goldsteins purchased an additional 1100-acre tract located three-tenths of a mile from Chalk

Point. They sold this property the same year to Star Enterprises, Ltd., a corporate enterprise wholly owned by them.

On November 21, 1974, the Goldsteins and Star (hereinafter the appellants) instituted a civil action for damages and injunctive relief in the United States District Court for the District of Columbia, alleging that air, water and noise pollution emanating from Pepco's Chalk Point plant constituted an actionable nuisance under the common law of Maryland and that Pepco was negligent in failing to install state-of-the-art pollution control equipment. The appellants subsequently withdrew their claims for damages based on water pollution and on negligence, thus alleging an actionable nuisance only from air and noise pollution. On March 5, 1975, the case was transferred for trial to the United States District Court for the District of Maryland.

The appellants alleged in their complaint that the damage to their properties began when the Chalk Point station commenced operations and was aggravated when the size of the plant was expanded at later dates. The parties stipulated that Unit No. 1 of the Chalk Point plant became operational in 1964, Unit No. 2 in 1965 and Unit No. 3 in 1975. It was also stipulated that the level of the alleged particulate pollution emanating from the plant has not been significantly greater since November 21, 1971 (the date three years prior to the filing of the suit) than it was before that date.

Pepco moved for summary judgment asserting that Maryland's three-year statute of limitations, § 5-101 of the Courts Article, barred appellants' cause of action since it provided that:

> "A civil action at law shall be filed within three years from the date it accrues unless another provision of the Code provides a different period of time within which an action shall be commenced."

By the time Pepco's motion for summary judgment was before the District Court for determination, the appellants had limited the relief requested to permanent damages, *i.e.,* monetary relief in an amount equal to the diminution in

market value of their properties as a result of air and noise pollution caused by Pepco's Chalk Point operations.

Pepco argued before the District Court that if its plant constituted a nuisance, the nuisance was permanent and became permanent prior to November 21, 1971 — three years before the filing of the appellants' suit. Pepco contended that since the alleged nuisance was permanent, the appellants' cause of action arose when the Chalk Point station was placed in operation, and since the appellants failed to institute suit within the three-year limitations period, the action was barred by § 5-101 of the Courts Article.

The appellants did not dispute Pepco's assertion that the operation of the Chalk Point plant, if a nuisance at all, was permanent. They contended that the nuisance, though permanent, was an ongoing activity which damaged their properties on a continuing basis, and consequently their cause of action should be barred only if the nuisance continues for the prescriptive rights period of twenty years.[1] Under this theory, it was argued that while § 5-101 may limit past damages from "ongoing activity" nuisances to those suffered no more than three years prior to suit, it would not bar recovery of present and prospective permanent damages so long as the prescriptive rights period has not elapsed. In support of their contention, the appellants relied upon Professor Charles T. McCormick's article entitled *Damages for Anticipated Injury to Land* in 37 Harv. L. Rev. 574 (1924).

In deciding the case on Pepco's motion for summary judgment, the District Court recognized the distinction between a permanent and a temporary nuisance. It noted that under Maryland law, damages — past, present and future — for permanent reduction in the market value of the land can only be recovered for a permanent nuisance, citing *Donohue Realty Co. v. Wagner,* 154 Md. 588, 141 A. 337 (1928), and *Carroll Springs Co. v. Schnepfe,* 111 Md. 420, 74 A. 828 (1909). Where the nuisance is only temporary, the court said that the injured party must resort to successive suits to recover for

---

1. To acquire by prescription the right to maintain a private nuisance, the user must continue the nuisance for an uninterrupted period of twenty years. *See* Susquehanna Fertilizer Co. v. Malone, 73 Md. 268, 280, 20 A. 900 (1890).

injuries if and when they actually occurred, citing *Aberdeen v. Bradford,* 94 Md. 670, 51 A. 614 (1902). In determining whether a nuisance is temporary or permanent, the District Court held that if the source of the nuisance is abatable, by either discontinuing the offending activity or eliminating the nuisance element, it is not permanent, citing *Carroll Springs* and *Lurssen v. Lloyd,* 76 Md. 360, 25 A. 294 (1892). It thus observed that since appellants did not complain of the existence of Pepco's plant per se, but only of its operation, the nuisance, if any, would disappear if Pepco were to discontinue its operations.

The court recognized that the distinction between a temporary and a permanent nuisance is sometimes difficult to draw, that abatability per se can be a "close question" and that courts examine the nature of the activity and whether, under the circumstances of its existence, it presumably will continue indefinitely. Because appellants sought permanent damages measured by the diminution in the market value of their properties, the District Court concluded that the appellants were alleging a permanent nuisance. It said that the general rule as to such nuisances, applicable in Maryland, is that an action to recover past, present and future damages must be brought within the three-year period of limitations and failure to do so acts as a bar to all recovery, citing *Donohue Realty Co. v. Wagner, supra.*

The District Court concluded that the appellants had a cause of action for permanent nuisance prior to November 21, 1971, and that in no event could they recover permanent damages suffered prior to that date. It gave in-depth consideration to appellants' contention, based on McCormick's article, that because the ongoing pollution generated by Pepco's facility amounted to a continuing burden on their properties, the three-year statute of limitations should not be applied to bar recovery in one action for permanent damages for all future injuries. The court recognized McCormick's view that an injured party should almost always have the election either to sue in one action for all future damages or to bring successive suits within the prescriptive period to recover damages as they occurred,

regardless of the statute of limitations. The court observed that McCormick's thesis was based in part on the uncertainty inherent in the definition of a "public nuisance" and in the fact that great confusion surrounds the use of that term — so much so that a plaintiff will often not know whether a court will find a nuisance to be permanent or not. Thus, if he mistakenly believes that the nuisance is not permanent, then he may be barred when he attempts to bring a second suit to recover for damages suffered since the first suit, the likely result being, according to McCormick, that the court will hold that the first suit was for permanent damages — past, present and future — and that he has no claim remaining to assert in the second action.

The District Court said that Professor McCormick found significance in the fact that the defendant in most cases is under a continuing legal duty to stop his offending activity. As to this, the court said:

> "This is so even if a court, because of the comparative hardships involved, or for other equitable reasons, refuses to enjoin the nuisance. [McCormick] believes the plaintiff should be permitted to wait until his injuries occur before being forced to sue for damages and should not be required to anticipate those injuries. It is only reasonable that if at any point a plaintiff wishes to end the succession of law suits, he should still be permitted to recover damages for future injuries to be caused by the permanent nuisance."

Although believing that there was merit in McCormick's position, the District Court declined to apply his teachings to the facts of the instant case, stating:

> "The defendant here is engaged in the generation of electric power as a public utility. Its activity is a service of vital importance to the public. The construction and operation of the Chalk Point plant was pursuant to a certificate of public convenience and necessity issued by the Maryland Public Services Commission (PSC). Under Maryland law, the PSC is

specifically directed to consider the effect on air quality of operations it approves. Article 78 § 54A. The plant's operation about which plaintiffs complain is an exercise of authority granted by the PSC. The defendant therefore falls within the class of 'quasi-public corporations' which, under Maryland law, cannot be enjoined from performing acts necessary to the exercise of their lawful authority, even though, in the absence of such authority, an injunction would lie. *Transcontinental Gas Pipe Line Corp. v. Gault,* 198 F.2d 196, 198 (4th Cir. 1952)."

As a result of these considerations, the court reasoned that Pepco has never been under a legal duty to the appellants to discontinue operations at its Chalk Point plant, although it may have been liable in damages for the injuries it caused. It said that the appellants "must be presumed to have known from the moment their cause of action arose that they could not obtain equitable relief." The proper course of action, the court said, "was to bring suit within three years to recover for injuries which plaintiffs could only assume would continue indefinitely given the physical nature of the Chalk Point plant and its obvious purpose."

In support of its holding, the court relied upon *Donohue Realty Co. v. Wagner, supra,* which in dicta indicated that an action for permanent nuisance to recover past, present and future damages must be brought within Maryland's three-year period of limitations. In that case, the seller sought specific performance of a contract to purchase land. The buyers claimed that a release executed by the sellers eight years previously so affected the property that the sellers' title was unmarketable. Specifically, the sellers had released Baltimore City from all damages arising out of the city's operation of a nearby city sewage plant. In granting specific performance, the court observed that the sewage plant "in the very nature of things is of a permanent character" and must have been so known by the purchaser; consequently, the purchaser must be presumed:

"to have known that such damages to the property, past, present, and future, occasioned by the location,

establishment, or operation of the plant in a normal manner, accrued to the person or persons owning the property at the time the conditions causing the damage first came into existence, and must have been recovered by such person or persons in one action *(Sedgewick on Damages,* par. 95; *Wood on Nuisances,* par. 869; 29 *Cyc.* 1273), and that such action must have been brought within the period fixed by the statute of limitations, which began to run when the conditions causing the damages first came into existence. . . ." 154 Md. at 594.

The District Court, after analyzing *Donohue Realty,* and observing that the sewage plant there involved had been constructed under legislative authority and was of a permanent character, said:

"The same is true in this case. It does not serve the public interest, and it is not the law of Maryland, that plaintiffs may bring successive suits where it is clear from the beginning that the injury is by its 'very nature' a permanent one."

In holding that appellants' suit was barred by Maryland's three-year limitations statute, the District Court said that the result reached was in full agreement with McCormick

"who recognized there were cases in which plaintiffs were not entitled to the election he proposed. Such a case was one where a public body had the power of eminent domain. The act of building a structure and using it in an offensive way by such a defendant was a legally privileged act, and, consequently, all damages had to be recovered in one action brought within the limitations period. McCormick, at 585-86. The defendant is in an identical position, and plaintiffs should be barred from pursuing the action any further." [2]

_____

2. Joseph I. Goldstein v. Potomac Electric Power Co., Civil No. Y-75-333, decided March 2, 1977 (unreported).

On appeal of the District Court's judgment, the United States Court of Appeals for the Fourth Circuit expressed uncertainty as to whether "the Maryland Court of Appeals, if confronted with the facts of the instant case, would hold the suit barred by § 5-101." In propounding the certified question, the Fourth Circuit acknowledged in its statement of relevant facts that the appellants' action was one solely for damages for permanent nuisance, *i.e.,* for one recovery for all damages, past, present and prospective. It said that "the applicability of § 5-101 to the facts of the instant case presents a potentially dispositive question of state law as to which there appears no controlling precedent in the Maryland case law."

I

Under Maryland law, permanent damages, past, present and prospective, for diminution in the market value of land caused by a nuisance can only be recovered if the nuisance is permanent. *Donohue Realty Co. v. Wagner,* 154 Md. 588, 141 A. 337 (1928); *State v. Shawinigan Electric P. Co.,* 132 Md. 128, 103 A. 453 (1918); *Carroll Springs Co. v. Schnepfe,* 111 Md. 420, 74 A. 828 (1909). This principle of law is predicated on the assumption that the nuisance will continue into the indefinite future, that it will continue to cause injury to the land, and that the only appropriate measure of damages is permanent reduction in the market value of the property resulting from the nuisance.

In suing for permanent damages, the appellants assert that there is now "virtually no doubt that the Chalk Point plant constitutes a permanent nuisance, given the continuation of the air pollution despite intense federal and state regulatory efforts over the last several years aimed at alleviating the problem." The damages they seek, appellants explain, are not because of the existence of the electric generating facility per se, but rather on account of the air and noise pollution emanating from the facility on an ongoing daily basis — pollution which they say will continue indefinitely and will not be abated.

Appellants' characterization of the nuisance as permanent is accepted by Pepco solely for the purpose of determining whether the action is barred by the Maryland three-year statute of limitations. Similarly, underlying the substance of the certified question is the Fourth Circuit's recognition that the nuisance sued upon is permanent and not temporary. While we address the certified question on the basis that the nuisance is permanent and not abatable, we point out that, undisclosed by the record before us, Pepco and the Maryland State Department of Health and Mental Hygiene entered into a consent decree in the Circuit Court for Montgomery County on February 27, 1978 whereby Pepco agreed to operate its Chalk Point facility in full compliance with Maryland air pollution requirements by 1981 and to take immediate interim steps toward achieving that result. Thus, the nuisance here alleged may not be of permanent duration, but may be abated. We also point out that the nuisance alleged by appellants, if it exists, is subject to abatement through the injunctive process by the State Department of Health and Mental Hygiene and the Public Service Commission. *See Baltimore Gas & Elec. v. Department,* 284 Md. 216, 395 A. 2d 1174 (1979), and Maryland Code (1957, 1978 Cum. Supp.) Art. 43, §§ 701 and 703.

## II

The certified question requires that we determine whether an action for past, present and future damages against a public utility for depreciation in the market value of the land resulting from an ongoing permanent nuisance which causes daily air and noise pollution is barred by § 5-101 of the Courts Article if instituted "more than three years from the date that the landowner alleges that the injuries commenced." Appellants allege in their complaint that the damage to the land commenced with the onset of the Chalk Point operation in 1965 and was aggravated when the size of the plant was expanded at later dates, although they admit that the level of pollution after 1971 was not greater than it was before that date. Whether the appellants had actual knowledge prior to

November 21, 1971 that the nuisance was permanent is not disclosed in the relevant statement of facts provided by the certifying court.

Maryland's three-year statute of limitations begins to run from the time the cause of action "accrues." *Levin v. Friedman,* 271 Md. 438, 317 A. 2d 831 (1974); *Leonhart v. Atkinson,* 265 Md. 219, 289 A. 2d 1 (1972). Since that term is not defined in the statute, the question of when a cause of action accrues is left to judicial determination — a determination properly made with reference to the rationale underlying statutes of limitations. *Harig v. Johns-Manville Products,* 284 Md. 70, 394 A. 2d 299 (1978). These purposes, as we have repeatedly observed, include encouraging promptness in instituting actions, suppressing stale or fraudulent claims, and avoiding inconvenience which may stem from delay when it is practicable to assert rights at an earlier time.

The adoption of statutes of limitations reflects a policy decision regarding what constitutes an adequate period of time for a person of ordinary diligence to pursue his claim. *Walko Corp. v. Burger Chef,* 281 Md. 207, 378 A. 2d 1100 (1977). As the Supreme Court said in *Chase Securities Corp. v. Donaldson,* 325 U. S. 304, 314, 65 S. Ct. 1137, 89 L. Ed. 1628 (1945), cited with approval in *Walko,* statutes of limitations find their justification in necessity and convenience, rather than logic; they are by definition arbitrary and do not discriminate between the just and the unjust claim, or the avoidable or unavoidable delay.

In Maryland, the general rule is that limitations against a right or cause of action run from the date of the alleged wrong and not from the time the wrong is discovered. *Harig, supra; Levin, supra; Leonhart, supra.* The test to be utilized in fixing the accrual date of a cause of action calls for a determination of the time the action became vested and enforceable, *Vincent v. Palmer,* 179 Md. 365, 19 A. 2d 183 (1941), *i.e.,* when the plaintiff could have maintained his action to a successful result. *James v. Weisheit,* 279 Md. 41, 367 A. 2d 482 (1977); *W., B. & A. Elec. R. R. Co. v. Moss,* 130 Md. 198, 100 A. 86 (1917). As Judge Digges pointed out for the

Court in *James,* a cause of action accrues when the plaintiff could have proved the essential elements of his action, including damages which must exist before the action accrues so as to trigger the running of the statute. 279 Md. at 44.[3]

Operative within this framework is the principle that courts strive to ascertain the legislative intention in adopting a limitations statute, and to apply the statute as the legislature intended that it be applied in determining the accrual date of the various causes of action. *See Mattingly v. Hopkins,* 254 Md. 88, 93, 253 A. 2d 904 (1969); *McMahon v. Dorchester Fertilizer Co.,* 184 Md. 155, 40 A. 2d 313 (1945). The principle has found application in cases of professional malpractice where, despite the general rule that limitations run against a cause of action from the date of the wrong, we have held that such actions accrue when the plaintiff discovers or with due diligence should have discovered that he has been wronged (the so-called discovery rule). *See Watson v. Dorsey,* 265 Md. 509, 290 A. 2d 530 (1972); *Leonhart v. Atkinson,* 265 Md. 219, 289 A. 2d 1 (1972); *Waldman v. Rohrbaugh,* 241 Md. 137, 215 A. 2d 825 (1966). The discovery rule has been extended to a cause of action for latent disease. *Harig v. Johns-Manville Products,* 284 Md. 70, 394 A. 2d 299 (1978). The rationale underlying these cases is this: the fact that a tort has been committed may go unnoticed for years, because the plaintiff is unqualified to ascertain the commission of the initial wrong and could not reasonably be expected to know of the tort until actual injury is experienced. *Waldman v. Rohrbaugh, supra.*

In determining the application of the statute of limitations in permanent nuisance cases, appellants contend that it is necessary to look to the underlying factual situation. To illustrate their point, appellants cite these examples: Where a defendant has constructed a dam that causes flooding of a plaintiff's land and all damages to the land are at once sustained, it is perhaps appropriate to have the statute of limitations begin to run from the date plaintiff's land is first

---

3. Maryland has not, however, adopted the so-called "maturation of harm" rule whereby the statute does not begin to run until the maturation of damages. *Harig, supra;* Smith v. Sherwood, 308 F. Supp. 895 (D. Md. 1970).

flooded. However, where a factory is constructed that emits particulates and gases which periodically pollute a plaintiff's land, the statute of limitations should preclude a plaintiff from maintaining an action only where the damages are sustained outside the prescriptive period.

Appellants suggest that while both the dam and factory would be permanent nuisances, the same rules should not be applied in determining when the statute of limitations runs. They contend that "[a] wooden application of the rule that the statute ... begins to run from the date the nuisance commenced operation would produce a correct result in one instance and the wrong result in another." By way of another example, the appellants suggest that where a defendant erects a structure such as a wall, and a plaintiff is injured because of interference with his right to light and air, he must file his action within the three-year limitations period dating from the time the nuisance is erected. In this instance, appellants say that the very existence of the structure, not continuing activity associated with it, brings about plaintiff's damage. Because the defendant needed to do nothing more than simply permit the structure to exist, the appellants believe that it is reasonable to require that suit be filed within the three-year limitations period. On the other hand, where a plaintiff complains of ongoing activity constituting a nuisance — the operation of a facility which pollutes the environment — it is not reasonable, appellants urge, to foreclose his right of action within the three-year period; his action should be barred only if the defendant continues the offending activity for the prescriptive rights period.

Appellants urge acceptance of McCormick's position that in cases of ongoing permanent nuisances the plaintiff should, without regard to the statute of limitations, have an election within the prescriptive period either to pursue successive actions for continuing damage or to bring one action for all damages, past, present and prospective. They maintain that to apply limitations against a permanent nuisance in three years is to unreasonably place the landowner in the awkward position of guessing at his peril whether the nuisance will be

deemed permanent, requiring nevertheless that he file his action for damages within the three-year period.

Appellants take issue with the District Court's conclusion that Pepco's offending activity, being legally privileged, could not be enjoined; that in view of the nature of Pepco's plant and its obvious purpose, appellants were presumed to know that the alleged nuisance was likely to continue indefinitely; and that consequently the suit for money damages must have been brought within three years from the date the injury commenced. Appellants contend that the court was wrong in its basic assumption that a quasi-public corporation could not be enjoined. They claim that *Transcontinental Gas Pipe Line Corp. v. Gault,* 198 F. 2d 196 (4th Cir. 1952), upon which the District Court relied, supports the opposite conclusion, and recognizes that a public utility is subject to the injunctive process, at least where it cannot demonstrate that all reasonable steps have been taken to eliminate the nuisance. Appellants also argue that merely because a public utility may have the power of eminent domain does not require landowners damaged by the utility's operations to assert a claim at the time the nuisance is initially manifested. Without regard to whether a public utility may be enjoined or possesses powers of eminent domain, appellants claim that the utility is nevertheless responsible for all damages its permanent and ongoing nuisance activity causes, and there is no logical reason why it should not pay for those damages up to the time a prescriptive right is obtained. To conclude otherwise, they argue, would conflict with the concept of prescriptive rights and render the doctrine meaningless, since the utility could pollute with impunity after the three-year limitations period expired.

Finally, the appellants contend that the dicta in *Donohue Realty* that actions for all damages caused by permanent nuisances will be barred unless brought within the three-year limitations period is inconsistent with holdings in other Maryland cases, primarily *Aberdeen v. Bradford,* 94 Md. 670, 51 A. 614 (1902).

## III

The general rule concerning limitations, as it applies to actions to recover past, present and prospective damages for a permanent nuisance is correctly set forth in *Donohue Realty. See, e.g., Phillips v. City of Pasadena,* 27 Cal. 2d 104, 162 P. 2d 625 (1945); *Cities Service Gas Co. v. Eggers,* 186 Okla. 466, 98 P. 2d 1114 (1940); *Missouri Pac. R. Co. v. Davis,* 53 S.W.2d 851 (Ark. 1932); *Parsons v. Uvalde Electric Light Co.,* 106 Tex. 212, 163 S. W. 1 (1914); *Virginia Hot Springs Co. v. McCray,* 106 Va. 461, 56 S. E. 216 (1907); 61 Am. Jur. 2d *Pollution Control* § 178 (1972); 58 Am. Jur. 2d *Nuisance* § 132 (1971). However logical McCormick's position may appear, nothing in *Aberdeen v. Bradford, supra,* or the other Maryland cases relied upon by appellants in which the issue was raised, supports the contention that permanent damages for the diminution in the market value of land are recoverable after the three-year period of limitations has expired if the permanent nuisance constitutes an ongoing activity. In *Aberdeen,* the defendant constructed a municipal waterworks which diverted water from the plaintiff's property. In a suit filed more than three years after the construction of the defendant's reservoir, the plaintiff sought past, present and prospective damages in a single action for the permanent reduction in the market value of her property resulting from the alleged nuisance. The defendant pleaded the statute of limitations as a bar to the suit, alleging that the damage was caused by the construction of the reservoir. Our predecessors held that the statute did not bar the action since the proximate cause of the damage was not the construction of the reservoir but rather the offensive use to which the facility was put, the injury occurring only from and after the installation and operation of the pumping station. Although not clear from the opinion, the record in the case discloses that the suit was filed within three years of the date that the pumping station became operational.

The test by which the accrual date of a cause of action is to be determined, as we have said, is the date when the plaintiff could have proved the essential elements of his action, including his claim for damages — in this instance

past, present and future damages for permanent reduction in the market value of the land. Under the statement of relevant facts supplied by the certifying court, it is apparent that Pepco's Chalk Point plant was an enduring structure, its operations likely to continue indefinitely. Because of the quasi-public nature of the facility, the likelihood that the operation would be enjoined upon the suit of a private party was extremely remote at best, as appellants themselves acknowledge. Granting that courts may exercise the equitable power to restrain nuisances maintained by businesses affected with a public interest, nevertheless injunctions ordinarily will not be issued where, as here, the harm to the public from granting an injunction would greatly outweigh the harm to the plaintiff caused by its denial. *See Transcontinental Gas Pipe Line Corp. v. Gault, supra; Corbi v. Hendrickson,* 268 Md. 459, 302 A. 2d 194 (1973); *Carr's Beach v. Annapolis Roads,* 222 Md. 392, 160 A. 2d 598 (1960); *Pope v. Clark,* 122 Md. 1, 89 A. 387 (1913); 1 Harper & James, *Law of Torts* § 1.24 (1956); *Restatement (Second) of Torts,* §§ 941-942 (1979); McCormick, at 587.

As the Supreme Court of California recognized in *Spaulding v. Cameron,* 38 Cal. 2d 265, 239 P. 2d 625, 627 (1952), "The clearest case of a permanent nuisance . . . is the one where the offending structure or condition is maintained as a necessary part of the operation of a public utility [since such conditions are ordinarily of indefinite duration]." The appellants' only remedy, for all practical purposes, was to initiate suit to recover monetary damages for the economic injury to their property since the nuisance alleged would likely continue indefinitely in view of the nature and purpose of the Chalk Point plant. That suit under Maryland law had to be brought within three years of the time that the permanency of the conditions causing the reduction in the market value of the land became manifest to a reasonably prudent person; it is at this point that the action for permanent damages accrued since the conditions causing the damage "first came into existence" at that time within the meaning of the rule recited in *Donohue Realty.* This is the date of the alleged wrong — the date accounting from which

the appellants, upon proof of their allegations, including a showing that the nuisance permanently diminished the value of their properties, could have maintained their action to a successful result, recovering past, present and prospective damages. Obviously, depending upon the facts of the particular case, the manifestation of the permanency of the nuisance may not be simultaneous with the onset of the nuisance.

In answer to the certified question, therefore, we hold that if the facts demonstrate that the permanency of the conditions causing the appellants' damages became manifest prior to November 21, 1971, then the suit is barred by § 5-101 of the Courts Article. If the facts show that the permanency of such conditions did not become manifest to a reasonably prudent person until after that date, the suit is not barred by limitations.

In so holding, we note, with all deference to Professor McCormick's views, that they have not taken hold in the Maryland Legislature. Not to apply the three-year period of limitations in permanent nuisance cases involving ongoing activity is to conclude that the legislature intended that there be no limitations period within which to assert a monetary claim for a permanent nuisance short of the twenty-year prescriptive period. Had the legislature intended this result, it undoubtedly would have provided an exception to § 5-101 for such actions, as it has done in connection with various other causes of action. *See, e.g.,* § 5-105 of the Courts Article and Maryland Code (1974), § 6-103 of the Real Property Article.[4]

*Question of law answered as herein
set forth; costs to abide the result.*

---

4. Of course, where the nuisance sued upon is only temporary, successive actions may be brought for damages for each invasion of the plaintiff's land until the period of prescription has elapsed, but recovery may only be had for damages actually sustained, other than permanent reduction in the market value of the property, within three years of the filing of the action.