# FREDA S. MOY *v.* RALPH L. BELL ET AL.

[No. 1499, September Term, 1979.]

*Decided July 15, 1980.*

The cause was argued before LOWE and WILNER, JJ., and JAMES S. GETTY, Associate Judge of the Fourth Judicial Circuit, specially assigned.

*Terrell N. Roberts* for appellant.

*Michael J. Budow,* with whom were *Richard E. Schimel* and *Clancy & Pfeifer* on the brief, for appellee John M. Dixon. *James P. Nolan,* with whom were *Serio, Carmody, Nichols & Childs* on the brief, for appellees Ralph L. and Virginia M. Bell. *Frank R. Weathersbee* on the brief for appellees John and Mary Jane Hardwick.

LOWE, J., delivered the opinion of the Court.

In *Goldstein v. Potomac Elec. Power Co.,* 285 Md. 673 (1979), the United States Court of Appeals for the Fourth Circuit asked the Maryland Court of Appeals to explain the effect of the statute of limitations (Md. Code, Cts. & Jud. Proc. Art., § 5-101) upon a suit for damages caused by a nuisance. An appeal from the Circuit Court for Anne Arundel County asks us to explain that explanation.

A number of building lots in a subdivision in Anne Arundel County were established upon very low, poorly drained land. Since 1966 appellant has owned one of these sites which had been improved with a house that she has occupied since 1968. Adjacent lots were subsequently owned by appellees Ralph and Virginia Bell (Bell) and John and Mary Jane Hardwick (Hardwick). In late 1973 and early 1974 the Bells built a house upon their excavated site. A year later the Hardwicks did the same.

According to appellant, that excavation of appellees' lots soon brought on her problems.

> "In late 1973 and early 1974, surface water began to flood Appellant's lots. Water flowed over the septic drain fields in Appellant's yard, and she began to experience problems with her septic system. Initially the toilet would not flush. She found that emptying the tank seemed to remedy the problem. However, as the ground later became more and more saturated with water, fluids from the septic began to back up through the toilet and bathtub, forcing Appellant to have the tank emptied more frequently. A few years [sic] later, during a period in 1974 when the ground was completely saturated, the septic ceased to operate altogether

and Appellant and her family had to use facilities in other homes. At same time, water also flowed under the house, which sat above ground on masonary [sic] piers. Water flowed under the house directly from [the Bell] lots . . .; after the Hardwicks altered their land, [an adjoining vacant] lot . . . began to collect water during the rainy season, and when it reached saturation, it spilled over onto Appellant's land and flowed under her house and onto the front yard. At times water collected to a depth of 7 ½ inches next to Appellant's front door step. Recurrent flooding under Appellant's house caused the wood structure to rot.

To keep the water off of her property so that she could use her backyard, Appellant filled in portions of her backyard. This reduced the flow of water onto the rear of her lots. Nevertheless all four lots — 52 through 55 — collectively continue to obstruct the natural flow of surface water, causing the water to run to the east and north side of Appellant's lots.

In December 1976, the Bells sold lots 54 and 55 to John Dixon, Appellee. Since Dixon's ownership of the land, the land continues to obstruct the natural flow of surface water and cause water buildup on Appellant's land."

Appellant first sued the Bells on September 26, 1977, subsequently joining the Hardwicks March 9, 1978 and on May 3, 1978 joined the Dixons. Essentially, the declaration (as amended five times) sought damages for, and injunctive relief from, the injurious results of wrongful diversions of surface water. Dixon's demurrer to the final damages count was sustained without leave to amend as to him and, at the conclusion of the trial, Dixon was dismissed when appellant elected not to pursue an injunction but "limited the relief requested to damages", conceding that in light of that election,

"... I have no further claim against [D]ixon." [1]

_____

1. We will grant Mr. Dixon's motion to dismiss the appeal as to him since appellant has limited this argument here to a single question relating only

The trial judge then heard arguments of counsel on the motions to dismiss by appellees Bell and Hardwick, after which he granted them on the ground that the statute of limitations was a bar to recovery. He added:

> ". . . I think that even if it were not a bar, that the — the damages that have been alleged have not really been shown to be the direct result of — of any surface water flowing from the Bell or Hardwick property, anymore than there's surface flow going the other way. I think there's a low point on the property line, by the testimony of the engineer, and that this water comes from three directions to get there, and it's all going to have to go down somehow or other by cooperation of the various property owners in there to get it out of the center of the property and out to a street in some direction. It's obviously going to cost some money, but it's going to cause a problem until somebody does that as a cooperative effect [sic]. Because I don't think it's a practical thing to try to take right angle turns at property lines and have the very little percentage of decline that would be possible in this relatively flat area. So I think you, from the testimony, it appears that the best solution is to go out the middle line out to the intersection of the street, even though that might entail getting an easement from somebody. But there's only one other lot down, that goes all the way out to Cedar Road. I don't know who owns that — 42 — but that can get all the way out that way. But I don't see that this whole problem can be solved without a cooperative effort. But I will grant the motion of — the motion of the defendant to dismiss on the grounds that the statute of limitations is a bar."

It seems the judge was not convinced that a nuisance was caused by appellees but decided even if it was, appellant had waited too long to seek redress.

---

to the reason given by the trial judge for dismissing the other two appellees. The failure to comply with Md. Rule 1031 c 5 waives appellant's appeal as to Dixon. Ricker v. Abrams, 263 Md. 509 (1971).

Appellant's relatively short question on appeal,

"[w]hether seasonal surface water flooding of Appellant's land caused by raising adjoining land to construct private home sites, was a permanent or temporary nuisance?",

raises interesting tangential legal issues in the light of *Goldstein, supra,* which limits, but does not resolve, issues necessary to the answer of appellant's question. It would appear that no purpose would be served by this Court resolving those issues since the trial judge, who was the factfinder, had already factually decided the case. Appellees contend that even if the limitations holding was not correct, the error is harmless in light of the factual findings of the trial judge.

Since our conclusion, after addressing the legal issue, will bring us to a comparable result, it is unfortunate that we cannot arrive more quickly by taking the factual path. The Court of Appeals has made it clear, however, that we may not.

Our system of jurisprudence, much like our language, is affected more by exceptions than by rules. Upon deciding a motion to dismiss under Md. Rule 535, the trial judge is compelled to view the evidence solely for its legal sufficiency in the light most favorable to the plaintiff just as he would in a jury case on motion for directed verdict. *Isen v. Phoenix Assurance Co.,* 259 Md. 564, 571 (1970). He may not weigh the testimony as though he was acting in his role as the trier of fact, *Hooton v. Kenneth B. Mumaw P. & H. Co.,* 271 Md. 565, 572 (1974). However, if the defendants rest their case without putting on any evidence, immediately after denying the motion to dismiss, the judge as factfinder may weigh the evidence to find which side preponderates, and may draw whatever inference he chooses, whomever it favors, so long as it is legitimately perceived.

There is, however, an exception, even upon motion to dismiss. If there is a legal question raised, which would end it if factually found to apply in the plaintiff's own case, the

judge, while still in his judicial capacity, is charged with deciding the appropriate facts necessary to deciding that legal issue. Here, when the motion to dismiss was offered raising the statute of limitations as a bar, the trial judge sat in both seats simultaneously. Our review on appeal then must carefully differentiate the purposes for which the facts were found. Because the ultimate issue to be decided on the motion was the applicability of the statute of limitations, we may not set aside the facts found by the trial judge in relation thereto unless he was clearly in error. Md. Rule 1086.

Appellant has focused her entire appeal to convince us that the nuisance causing the damage was temporary (despite having labelled it permanent in her first amended declaration) because

> "where the nuisance sued upon is only temporary, successive actions may be brought for damages for each invasion of the plaintiff's land until the period of prescription has elapsed, but recovery may only be had for damages actually sustained, other than permanent reduction in the market value of the property, within three years of the filing of the action." *Goldstein, supra* at 690, n. 4.

See also *Aberdeen v. Bradford,* 94 Md. 670 (1902). Perhaps because the question of permanency for some purpose unrelated to limitations is essentially a factual one, appellant argued upon the premise that our standard of review of the court's factual conclusion for limitations purposes was the same as upon reviewing a motion to dismiss, *i.e.,* whether a prima facie case had been established when the evidence is reviewed in a light most favorable to her. Mrs. Moy stated in her brief that:

> "If the lower court had correctly viewed all of the evidence and inferences in Appellant's favor, it would have concluded that change of the natural flow of surface water itself was not permanent."

But as we have pointed out the standard is quite the

contrary in this case where the determination of permanency also determines whether the statute of limitations applies. The application of a statute of limitations is strictly a legal question and it is apparent that the facts necessary to determine its application, such as when a cause of action accrues,[2] if a cause of action accrues, etc., must be made by the judge in his judicial role. See *Harig v. Johns-Manville Products,* 284 Md. 70, 74-75 (1978); *Waldman v. Rohrbaugh,* 241 Md. 137, 145 (1966). The obvious significance of that conclusion is that we do not review the evidence in the light most favorable to appellant to determine whether there was any evidence from which a factfinder could have reached a conclusion contrary to the court's; rather, our review must decide if there was any evidence, however slight, to support the limitations-related factual findings of the judge.

— the issue —

The factors to be considered in determining whether a nuisance is permanent or temporary was obviously a parenthetical reference in *Goldstein, supra* at 682-683. The Fourth Circuit, in certifying its question to the Court of Appeals had presupposed the nuisance in that case to have been permanent. The Court of Appeals made it clear that in acting on that presupposition, it was not to be interpreted as having determined that the nuisance there was permanent. It stated that

" ... the nuisance here alleged may not be of permanent duration, but may be abated. . . . [A]lso ... it ... is subject to abatement through the injunctive process by the State Department of Health and Mental Hygiene and the Public Service Commission. *See Baltimore Gas & Elec. v. Department,* 284 Md. 216, 395 A.2d 1174 (1979), and

---

**2.** The trial judge found that the cause of action accrued when Mrs. Moy was damaged in late 1973 and early 1974 since she was at that time aware of the cause of the damage. The original action here was filed in September of 1977 which the judge found well beyond the three year limitations period. Md. Code, Cts. & Jud. Proc. Art., § 5-101.

Maryland Code (1957, 1978 Cum. Supp.) Art. 43, §§ 701 and 703." *Id.* at 683.

This observation was in accord with the encyclopedic distinction indicating that the difference between a permanent and a temporary nuisance [3] is that a temporary one can be abated, while a permanent nuisance will be presumed by its character and circumstance to continue indefinitely. 66 C.J.S. *Nuisances* § 5 (1950); 58 Am. Jur. 2d *Nuisances* §§ 117, 118 (1971). Recognizing, however, that any nuisance man creates, man can abate, it seems clear that the question being considered in *Goldstein* is not the possibility of abatement but rather its likelihood. That nuance is recognized expressly in the encyclopedias cited, and borne out in *Goldstein*'s allusion to the State departments' authority (and impliedly their responsibility) to abate nuisances of the type in *Goldstein* by injunctive power statutorily granted.

Applying the wrong standard of review, appellant here initially argues that the evidence "in a light most favorable" to her indicates that the nuisance was temporary because it could be

1) enjoined by a court,
2) abated by appellant by raising or grading her lot, or
3) abated by the county with storm water drains.

As to appellant's third contention, there was no evidence whatsoever that the county was considering storm drains of any type, let alone something that would alleviate appellant's problem, only that the possibility existed that The county *could* do so. The possibility of abatement by public authority without evidence thereof would hardly suffice by her standard of review. It clearly is not so compelling that we must hold the trial judge's factual

---

**3.** The distinction appears to be another archaic judicial distinction of limited purpose which might best be abolished. Unfortunately for Mrs. Moy, the Court of Appeals does not agree. See Goldstein v. Potomac Elec. Power Co., 285 Md. 673 (1979).

finding was clearly in error for not having concluded that the county was likely to abate the nuisance.

Her first contention, that the nuisance could be abated by injunction, is belied by her own election at trial. In electing to go forward on her damages claim and discarding injunctive relief, she said:

> "I'm not sure that an injunction really would — would do much good. I think that there's no assurance that it would really be — could be enforced and there would be a lot of associated problems with that, whereas the remedy that was selected by our expert would be a way of alleviating Mrs. Moy's problems and at the same time not causing any surface water to anybody else."

In addition to her own recognition of the unlikelihood of obtaining injunctive relief because of its unenforceability,[4] we note that the evidence does not show that the diversion was caused by intentional misconduct, or that it could be compulsorily abated without disproportionate and excessive economic hardship upon appellees, who inferentially would be compelled to remove the very landfills upon which their homes were built. Prosser *Torts* (4th ed. 1971) at 603-604 points out that

> " . . . even where there is an existing nuisance and present harm, the equity court may in its discretion deny the injunction where the balance of the equities involved is in favor of the defendant. It may take into consideration the relative economic hardship which will result to the parties from the granting or denial of the injunction, the good faith or intentional misconduct of each, and the interest of the general public in the continuation of the defendant's enterprise." (Footnotes omitted).

---

4. An injunction may be denied solely on the ground of impossibility of enforcement. Bank v. Bank, 180 Md. 254, 263-264 (1942).

It would appear in the absence of evidence in the case of some solution other than reexcavating to its former dishlike surface, injunctive relief would have been denied even if a nuisance was found to exist. Surely the judge who has the injunction question before him when hearing the evidence, is best able to consider the likelihood of its being enjoined. But see *Turner v. Wash. Sanitary Comm.,* 221 Md. 494, 506 (1960).

Finally, appellant contends that she could have abated the nuisance herself by raising and grading her lot. Even if likely, this would have been at her own risk in further diverting the water to some other hapless owner. The privilege of abatement must be exercised within a reasonable time after knowledge of the nuisance is acquired, or should have been acquired, by the person entitled to abate. Prosser at 605. If there has been a sufficient delay to allow a resort to legal process, the reason for the privilege fails and the privilege with it. *Ibid.*

Furthermore, we look at the evidence and find that appellant had begun to attempt such self-help but abandoned her attempt to abate by raising and grading her land, inferentially indicating the impracticability or ineffectiveness of self-help. Again, the evidence is not compelling that she could have abated by raising and grading; rather it negates that contention. The expert testimony of what would have had to be done showed the cost to be so substantial that she sought the remedy of damages before the likelihood of completion was feasible.

This brings us to the type of damages sought by appellant, *i.e.,* the septic system costs, the cost of raising her house, and repair of wood rot. Since she did not sue for, or seek to prove, diminution of the market value of her land, she argues that the nuisance could not be permanent. While permanency of the nuisance is prerequisite for diminution damages, diminished value is not a prerequisite element of proof of permanency. That contention is specious.

We conclude from our review of the record that the trial judge was not clearly in error in his factual findings on the

limitations issue; that he properly applied the limitations law; and, that his discretion as exercised (in granting the motion to dismiss as barred by limitations) was not abused.

*Judgment affirmed.*
*Costs to be paid by appellant.*