Roger JACQUES et al.

v.

PIONEER PLASTICS, INC.

and

Sterling Engineered Products, Inc.

Supreme Judicial Court of Maine.

Argued Feb. 6, 1996.
Decided May 24, 1996.

Paul F. Macri, (orally), John E. Sedgewick, Berman & Simmons, P.A., Lewiston, for Plaintiffs.

Richard L. Suter (orally), Preti, Flaherty, Beliveau & Pachios, Portland, for Defendants.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, RUDMAN, and DANA, JJ.

DANA, Justice.

Roger Jacques and Janine Jacques appeal from the entry of a summary judgment in the Superior Court (Androscoggin County, *Fritzsche, J.*) in favor of defendants Pioneer Plastics, Inc. and Sterling Engineered Products, Inc. On appeal the Jacques argue that their action for trespass and nuisance is not barred by the statute of limitations because a genuine issue of material fact has been raised whether environmental contaminants dumped by the defendants' predecessor constitute a continuing trespass and/or nuisance.[1] The plaintiffs also argue that the court erred in granting the defendants' motion to quash a subpoena *duces tecum* and for a protective order that prohibits the plaintiffs from deposing engineers hired by the defendants. We agree that a genuine issue of material fact has been raised whether the contaminants on the plaintiffs' land are a continuing trespass or nuisance and vacate the judgment.

In approximately 1976 the plaintiffs purchased a lot of land in Auburn (lot A) abutting the land now owned by Pioneer and previously owned by Sterling. Lot A was a wooded lot with no improvements, accessed via a "farming only" entrance that permitted access to Washington Street, a limited access highway. Roger Jacques cleared the lot and desired to subdivide it. In 1980 he was informed by the City of Auburn that he would not be permitted to do so until he obtained alternate access to the property. The plaintiffs then purchased for $500 an approximately sixty-foot wide, three thousand-foot long, piece of property (lot B) con-

---

1. The parties and the court, in its grant of the defendants' motion for a summary judgment, have not distinguished plaintiffs' claims for continuing trespass and continuing nuisance. Because our decision does not rely on the distinction between the two causes of action, *see* W. Page Keeton *et al., Prosser and Keeton on the Law of Torts* § 87, at 622 (5th ed. 1984) (trespass is an invasion of the plaintiff's interest in the exclusive possession of his land, while nuisance is an interference with the use and enjoyment of it), for the purposes of this appeal we will treat them in the same manner.

necting lot A and Rodman Road. Prior to purchasing lot B Roger Jacques walked the property and saw a six hundred-foot long mound of sand, a portion of which was on lot B. At the time he thought he would be able to use the sand for his intended road. Roger began clearing lot B but was stopped by the Department of Environmental Protection because of its concern that all of its "test pipes" on lot B would be damaged. After three weeks the DEP allowed Roger to continue clearing, but when he attempted to move the sand with a bulldozer he was again told by the DEP to stop.

The sand area that is presently partly on the plaintiffs' land is a former lagoon dump site, into which liquid chemical wastes were deposited. It is undisputed that the two defendants in this case are among the responsible parties for the waste lagoon.[2] The chemicals in the lagoon have been described by the DEP as dangerous to public health and in need of remediation. It is undisputed that all dumping ceased as of 1978.

The plaintiffs' amended complaint alleges that the dumped chemicals constitute a trespass and a nuisance. In addition to damages for the destruction of the fair market value of both lots A and B, the plaintiffs seek indemnification for any costs they may be subjected to as a result of the presence of hazardous materials on their property and an injunction forcing the defendants to remove such materials.

### I.

A summary judgment is proper when the party that bears the burden of proof of an essential element at trial has presented evidence that, if it presented no more, would entitle the opposing party to a judgment as a matter of law. *Guiggey v.*

*Bombardier,* 615 A.2d 1169, 1171 (Me.1992). In reviewing a grant of a summary judgment we view the evidence in the light most favorable to the party against whom a judgment has been granted, and review the trial court decision for errors of law. *Casco N. Bank v. Estate of Grosse,* 657 A.2d 778, 780 (Me. 1995). We independently determine whether the record supports the conclusion that there is no genuine issue of material fact and that the prevailing party is entitled to a judgment as a matter of law. *Id.*

The statute of limitations for trespass and nuisance is six years. 14 M.R.S.A. § 752 (1980). Because it is undisputed that no dumping has occurred since 1978, the plaintiffs' claim may be maintained only if the materials on lot B constitute a continuing nuisance or trespass. *See* 58 Am.Jur.2d *Nuisances* § 307 (1989) (where nuisance complained of is permanent in nature statute of limitations may bar action if it is not brought within prescribed period). We have long recognized claims for a continuing trespass, *Russell v. Brown,* 63 Me. 203, 204 (1875) (prior judgment for trespass does not preclude new action where trespassing "thing" still on plaintiff's land), and for a continuing nuisance, *Cumberland and Oxford Canal Corp. v. Hitchings,* 65 Me. 140, 142–43 (1876) (successive actions may be maintained until defendant removes nuisance). *See also Murray v. Bath Iron Works Corp.,* 867 F.Supp. 33, 48 (D.Me.1994) (Maine law recognizes both the doctrines of continuing trespass and nuisance). If the presence of the lagoon on lot B does constitute a continuing trespass or nuisance, a new cause of action accrues each day the hazardous materials remain and the plaintiffs' action is not barred by the statute of limitations.

**2.** According to a 1992 DEP compliance order an unrelated company called Pioneer Plastics Corporation built a manufacturing facility in 1965. From 1965 until 1978 the facility discharged wastewater, including liquid resins, pumice, and other process chemicals, into two lagoons, one of which is the subject of this action. In 1975 Pioneer Plastics Corporation was acquired by and became a division of LOF Plastics, Inc. In 1986 LOF Plastics' parent company changed LOF's name to Sterling Engineered Products, Inc. The Pioneer Plastics division of LOF was combined with another corporation and also renamed. In 1989 Sterling sold the assets of its former Pioneer Plastics division, including but not limited to the Auburn facility, to a new company named Pioneer Plastics, Inc., now called Pioneer Plastics Corporation, a Delaware corporation with its principal place of business in Auburn. Pursuant to Pioneer and Sterling's 1989 purchase and sale agreement Sterling is responsible for the defense and indemnification of this suit.

In granting the defendants' motion for a summary judgment the trial court relied on a recent decision of the Massachusetts Supreme Judicial Court, *Carpenter v. Texaco, Inc.,* 419 Mass. 581, 646 N.E.2d 398 (1995). In *Carpenter* the court affirmed a summary judgment in favor of Texaco because the statute of limitations for the Carpenter's trespass and nuisance claims had run. *Id.* 646 N.E.2d at 399–400. The Carpenters owned land near a gasoline service station formerly owned by Texaco. *Id.* 646 N.E.2d at 399. The Carpenters became aware in 1982 that gasoline from an underground storage tank was leaking onto their property, and argued that the continued presence of gasoline on their property amounted to a continuing trespass and nuisance. *Id.* Finding that after 1984 there was "no continuing release of gasoline from the gasoline station property, nor seepage of gasoline onto the plaintiff's property," the summary judgment was affirmed because there was no evidence that any seepage had occurred within the three year statute of limitations period prior to the commencement of the suit. *Id.* 646 N.E.2d at 399–400.

The plaintiffs contend that the court's reliance on *Carpenter* is misplaced because in Maine the test for whether a nuisance or trespass is continuing is whether the trespassing material remains on the property and whether it is abatable. They further contend that the question of abatability is one of fact, and therefore there is a disputed issue of material fact that precludes a summary judgment. The Defendants rely on *Carpenter* for the proposition that contamination that results from discontinued pollution is not a continuing nuisance or trespass.

The *Carpenter* court found that a continuing nuisance or trespass must be based on "recurring tortious or unlawful conduct and is not established by the continuation of harm caused by previous but terminated tortious or unlawful conduct." *Carpenter,* 646 N.E.2d at 399. In other words, the Massachusetts court's focus was on the conduct of the tortfeasor. *See also Sixty–Eight Devonshire, Inc. v. Shapiro,* 348 Mass. 177, 202 N.E.2d 811 (1964) (gutter repeatedly poured water onto plaintiff's building); *Wishnewsky*

*v. Town of Saugus,* 325 Mass. 191, 89 N.E.2d 783 (1950) (recurrent and intermittent flooding of drainage system caused damage to plaintiff's land). In contrast, we have defined a nuisance as continuing when the thing that constitutes the nuisance "is not of such a permanent nature that it can not readily be removed and thus abated." *Caron v. Margolin,* 128 Me. 339, 343, 147 A. 419 (1929) (defendant's addition, interfering with a restrictive easement held by the plaintiffs, clearly a continuing nuisance). *See also Murray v. Bath Iron Works, Corp.,* 867 F.Supp. at 48 (denying defendant's motion for a summary judgment on claim of continuing trespass and nuisance resulting from presence of waste on plaintiff's property because "[a]s long as the nuisance continues unabated, a plaintiff may bring successive actions for damages throughout its continuance"); *Restatement (Second) of Torts* § 162 cmt. e (1965) ("A continuing trespass must be distinguished from a trespass which permanently changes the physical condition of the land"). In the present action the subject of our inquiry is not the dumping itself, but instead the hazardous material that remains on the plaintiffs' land.

In determining the distinction between "permanent" and "continuing" one commentator has considered the following three factors:

(1) is the source of the invasion physically permanent, i.e., is it likely in the nature of things, to remain indefinitely? (2) is the source of the invasion the kind of thing an equity court would refuse to abate by injunction because of its value to the community or because of relations between the parties? (3) which party seeks the permanent or prospective measure of damages?

Dan B. Dobbs, *Handbook on the Law of Remedies* § 5.4, p. 338 (1973). Professor Dobbs goes on to state that "a nuisance or trespass is usually not regarded as a permanent one unless it is physically permanent or likely to continue indefinitely." *Id.* Likewise, many courts have considered the question of abatability to be the deciding factor in their determination of whether a nuisance or trespass is continuous or permanent. *Beatty v. Washington Metro. Area Transit Auth.,*

860 F.2d 1117, 1122 (D.C.Cir.1988) (continuing nuisance one which is abatable, or intermittent or periodical); *Reynolds Metals Co. v. Wand,* 308 F.2d 504, 508 (9th Cir.1962) (aluminum plant's emissions permanent nuisance because unlikely they would be abated or enjoined); *City of Sioux Falls v. Miller,* 492 N.W.2d 116, 119 (S.D.1992) (periodic flooding from storm sewer system permanent nuisance because unlikely to be enjoined due in part to value to community); *Racine v. Glendale Shooting Club, Inc.,* 755 S.W.2d 369, 374 (Mo.Ct.App.1988) (recognizing that distinguishing feature between permanent and temporary nuisance is its abatability).

The defendants argue that even if abatability is the rule in Maine, public policy supports not applying that rule to environmental contamination cases. We see no reason why our long-standing rule of what constitutes a continuing nuisance or trespass should contain an exception for environmental waste. Our rule without such an exception encourages abatement by the responsible party, an important public policy consideration. In contrast, if we were to exclude from this test environmental contamination cases the effect would be to grant defendants the equivalent of an easement, thereby reducing significantly the chances that the hazardous materials would be cleaned up.

■ The abatability of the materials currently on lot B is a question of fact. *Beatty v. Washington Metro. Area Transit Auth.,* 860 F.2d at 1124. The plaintiffs have raised a genuine issue of material fact whether the contaminants on lot B are abatable by producing a 1992 DEP compliance order requiring the responsible parties to submit a remediation feasibility study. As part of that study the responsible parties must include at least the option of the removal of all wastes and contaminated soils from the site.[3]

■ The defendants also argue that even if the contamination is a continuing trespass or nuisance a summary judgment is appropriate because, first, the plaintiffs have failed

to show possession at the time of the tortious conduct, and second, they "came to the nuisance." Both of these arguments fail. When a trespass or nuisance continues, it generates a new cause of action each successive day. Therefore, "[i]f the possessory interest in the land has been transferred subsequent to the actor's placing of the thing on the land, the transferee of the land may maintain an action for its continuance there." *Restatement (Second) of Torts* § 161 cmt. e (1965); *see also Spain v. City of Cape Girardeau,* 484 S.W.2d 498, 506 (Mo.Ct.App.1972) (recognizing same). Accordingly, the plaintiffs' present possessory interest is sufficient to maintain this action.

■ Two factors militate against a summary judgment because the plaintiffs "came to the nuisance." First, there is a significant factual question about the activities of Roger Jacques while an employee at Pioneer and about what knowledge he did or did not have when he purchased either lot A or lot B. The record supports the conclusion that at the time of his employment at Pioneer in the 1960s Roger drove trucks that dumped chemical wastes into a lagoon near the current lot B. Roger stated in his deposition, however, that when he purchased the property (both lots A and B) he saw the sand mound but made no connection between the lagoon and the presence of the sand. Second, "as a rule, it is no justification for maintaining a nuisance that the party complaining of it came voluntarily within its reach, and the doctrine of "coming to the nuisance" is not a complete defense in an action based upon nuisance." 58 Am.Jur.2d *Nuisances* § 440 (1989). *See also Restatement (Second) of Torts* § 840D (1979) (fact that plaintiff acquired land after nuisance interfering with land came into existence is not in itself sufficient to bar action).

## II.

The plaintiffs next argue that the court erred when it granted the defendants' motion

---

**3.** The issue is not before us and thus we do not decide what level of proof is necessary for the Jacques to successfully argue that the materials that are on lot B are in fact abatable. *See e.g., Moy v. Bell,* 46 Md.App. 364, 416 A.2d 289, 294

(1980) (recognizing that more than likely any nuisance created can be abated, and therefore more appropriate inquiry is not possibility of abatement but the likelihood of the abatement).

for a protective order and to quash a subpoena seeking to depose engineers hired by the defendants. They argue that the court erred because either (1) discovery privileges protecting work product and experts' conclusions do not apply to facts known or learned by a witness, or (2) defendants waived their discovery privilege when they voluntarily disclosed a significant part of the privileged matter to the DEP.

 A party aggrieved by a discovery order "must show both that the trial judge committed error in the discovery ruling despite the considerable discretion vested in the judge ... and that the discovery order affected the outcome of the action to his prejudice." Field, McKusick & Wroth, *Maine Civil Practice* § 26.18b at 212 (2d ed. Supp.1981).

M.R.Civ.P. 26(b)(4)(B) states:

A party may discover *facts known* or *opinions held* by an expert who has been retained or specially employed by another party in anticipation of litigation or preparation for trial and who is not expected to be called as a witness at trial, only as provided in Rule 35(b) or upon a showing of exceptional circumstances under which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject by other means.

(emphasis added). The party seeking to protect its expert's facts or opinions bears the burden to show that the expert was "employed ... in anticipation of litigation or preparation for trial." *Santos v. Rando Mach. Corp.*, 151 F.R.D. 19, 21 (D.R.I.1993). In the instant action the defendants provided an affidavit of Madonna McGrath, a senior environmental attorney for Trinova Corp., Sterling's parent company. In her affidavit McGrath states that the engineers were hired in anticipation of potential litigation resulting from both the DEP compliance order and the plaintiffs' suit. The fact that the engineers were retained for dual purposes does not remove the protection of the rule. *Id.*

 Because the work sought is not a physician or psychologist's report pursuant to rule 35(b), the plaintiffs must show "excep-

tional circumstances" to be able to depose the defendants' engineers. The standard for exceptional circumstances is the impracticality for the requesting party to obtain facts or opinions on the same subject by other means. *Puerto Rico Aqueduct and Sewer Auth. v. Clow Corp.*, 108 F.R.D. 304, 310 (D.P.R. 1985). Moreover, showing exceptional circumstances constitutes a "heavy burden." *Id.* In *Wheeler v. School Admin. Unit 21*, 130 N.H. 666, 550 A.2d 980 (1988), the New Hampshire Supreme Court held that the plaintiff had failed to meet his burden of showing exceptional circumstances when he argued only that the defendant's expert was the only person with the necessary qualifications in New Hampshire. *Id.* 550 A.2d at 982. The court considered that the plaintiff could use experts from other states. *Id.*

 In the instant case the plaintiffs have available to them several environmental reports done within the past six years, in addition to DEP records available through the Freedom of Information Act. Further, they do not attempt to explain why they did not hire their own expert to do tests that may be helpful to their cause. Their argument that the defendants waived their privilege because they disclosed a report to the DEP, another potential adverse litigation party, is unavailing. There is no showing whatsoever that the one report is a "significant part of the privileged matter." *See Hartford Fire Ins. Co. v. Pure Air on the Lake Ltd.*, 154 F.R.D. 202, 211 (N.D.Ind. 1993) (*quoting In re Dayco Corp. Derivative Sec. Litig.*, 99 F.R.D. 616 (S.D.Ohio 1983)) (holding that a party waives a discovery privilege when it voluntarily discloses a significant part of the privileged matter). Unless the plaintiffs can show that the experts possess a historical fact not otherwise available, we find that the court acted within its discretion in granting the defendants' motion for a protective order and to quash the subpoena.

The entry is:

Judgment vacated.

All concurring.